51   137
127a  172

JOHN R. VANNORSDALL *et al. vs.* ISAAC VAN DEVENTER *et al.*

A testator, after directing the payment of his debts, by the second and third clauses of his will, gave to his wife all his personal property, and all his real estate during her lifetime. By the fourth, fifth and sixth clauses he gave and bequeathed to the "legal heirs" of his brother A., deceased, and to the "legal heirs" of his sister M., deceased, and to the "heirs" of his brother-in-law, W. V., all his real estate at the death of his (the testator's) wife "to be divided equally between each of the heirs above named," after the decease of his said wife. The testator died without issue, and his wife afterwards died. W. V. was still living. The testator's wife was a sister of W. V., the father of the defendants, and the latter, upon the death of their father, would be his heirs at law. In an action for the construction of such will; *Held* that the real estate mentioned in the will belonged to, and was owned in common by the parties to the suit, and that each of the twelve plaintiffs and the two defendants was entitled to one fourteenth thereof.

*Held, also,* that the intent of the testator was to give to his wife his real estate during her life, and after her decease to give the same in equal portions to the three classes of persons who should be heirs of his brother A., of his sister, M., and of his brother-in-law W. V.; the words "heirs," so far as related to the heirs of W. V., being used as synonymous with *children;* and in respect to the heirs of A. and M. there was no contingency in respect to the persons to take, and the estate would vest immediately upon the death of the testator.

Vannorsdall *v.* Van Deventer.

When a will recognizes the ancestor as living, and makes a devise to his heirs, *eo nomine*, this shows that the term is not used in its strict sense, but as meaning the heirs apparent of the ancestor named.

CASE submitted pursuant to section 372 of the Code of Procedure, for the purpose of obtaining a judicial construction of the last will and testament of Jacob Vannorsdall, and to arrive at the true intent and meaning of the testator, as to the disposition of his real estate.

The following facts were agreed upon by the parties:

On or about the tenth day of April, 1861, Jacob Vannorsdall, who was then a resident of the town of Mount Morris, Livingston county, died seised and possessed of certain real estate situated therein, and some personal property.

At the time of his death the said Jacob Vannorsdall left a last will and testament, by which he devised and directed as follows:

" *First.* I direct that all my just debts, including the expense of my interment and suitable tomb stones, be paid by my executors hereinafter named.

*Second.* I give and bequeath to my beloved wife, Elizabeth Vannorsdall, all my personal property, including all demands due to me from any person or persons after paying all debts which I am now owing, due or to become due, or any debts I may so owe at my decease.

*Third.* I give to my beloved wife, Elizabeth, all my real estate, viz. my farm, on which I reside, and my house and lot in the village of Tuscarora, during her lifetime.

*Fourth.* I give and bequeath to the legal heirs of my brother, Abram Vannorsdall, deceased,

*Fifth.* And the legal heirs of my sister, Maria Snyder, deceased,

*Sixth.* I give and bequeath to the heirs of my brother-in-law, William Van Deventer, all my real estate at the death of my wife, Elizabeth, to be divided equally between

each of the heirs above named after the decease of my wife, Elizabeth Vannorsdall."

By the seventh clause, he appointed his wife, Elizabeth Vannorsdall and Asahel Northway, executors of his will, revoking all former wills.

After the death of the said Jacob Vannorsdall, the said will was duly admitted to probate by and before the surrogate of Livinston county, and letters testamentary were duly issued to the said Elizabeth Vannorsdall, as executrix, and Asahel Northway, executor, who immediately entered upon the discharge of their duties, and have fully completed and performed the same. After the death of the said Jacob Vannorsdall, the said Elizabeth Vannorsdall received, as legatee under said will, all the personal estate of the said tes. tator, after the payment of his debts and funeral expenses; and she went into the possession of the said real estate and continued in possession of the same until her death. That on or about the 12th day of February, 1867, the said Elizabeth Vannorsdall departed. this life. That said Jacob Vannorsdall died without issue. That the said Elizabeth Vannorsdall was a sister of Wm. Van Deventer, the father of the defendants. That the said Jacob Vannorsdall and William Van Deventer and these defendants had resided in Mount Morris, aforesaid, for a period of thirty years, and upwards, next prior to the death of said Jacob. That the said Abram Vannorsdall was a brother of the said Jacob, and that said Abram and his family had resided in the state of Ohio for a period of twelve years next prior to the death of said testator, and that the said Abram Vannorsdall was at the time of the making of said will deceased, and that since his death none of his heirs at law have resided in the state of New York. That the said Maria Snyder was a sister of the testator, and that she and her family had resided in the county of Ontario for twenty years and upwards next prior to her death, and her heirs have resided there since. That neither the said William

Van Deventer or his wife were any blood relation of the said testator. That the following named persons are the children and only heirs of Abram Vannorsdall, deceased, viz: John R. Vannorsdall, Ellen V. Long, Cornelius Vannorsdall, Isaac Vannorsdall, James Vannorsdall, Garret Vannorsdall, Elizabeth Whitmore, Gilbert Vannorsdall, and Agnes Vannorsdall. And that Isaac Van Deventer and Elizabeth Post are the children of William Van Deventer, and at his death will be his heirs at law. That the following named persons are the children and the only legal heirs of the said Maria Snyder, deceased, viz: David Snyder, John B. Snyder and David Warren. That the plaintiffs herein are the only legal heirs of the said Jacob Vannorsdall, deceased. That the value of the said real estate herein described is about seven thousand dollars.

The plaintiffs claimed that in and by the said last will and testament the said real estate belongs to and is owned in common by the parties hereto, and that each of said parties is the owner of and entitled to one fourteenth of said real estate so mentioned and described in said will.

The defendants claimed that in and by said last will and testament they are entitled to and are the sole owners of the said real estate, and that the plaintiffs have no right, title or interest therein.

*McNeil Seymour,* for the plaintiffs. I. We claim that the testator, under the circumstances in which he was placed, performing almost his last act on earth, intended *something* by the fourth and fifth clauses of his will. And we say negatively, 1st. That he did not intend to make a senseless or meaningless parade of the names of his heirs at law. 2d. That he did not intend to merely trifle with their feelings.

II. The fourth, fifth and sixth clauses of the will are but one. By which the testator divides his estate per capita between the children of a deceased brother and sister, and

the children of his brother-in-law, William Van Deventer. 1. Any other construction of the will would leave without meaning the clauses numbered fourth and fifth. 2. The direction in the sixth clause, " to be divided equally among *each* of the heirs *above named*," shows clearly that the testator had reference to the three sets of heirs named in the fourth, fifth and sixth clauses of the will, for to apply this direction of the testator to the words " the heirs," mentioned in the sixth clause, would not be only illogical but unnatural; if the estate were intended for the heirs of one person such direction was wholly unnecessary, for they would take per capita under the designation of " heirs of my brother-in-law," without further statements or directions as to division. If the testator intended, which we claim to be obvious, that his estate should be divided amongst the three sets of heirs, unless each set was composed of the same number, which practically would never happen, then to insure a per capita division, the words quoted in the sixth subdivision would be absolutely necessary. The word " each " in such quotation obviously refers to the three sets of heirs before named.

III. The external evidences of the intent of the testator are equally clear. 1. The plaintiffs in this action are the only heirs at law of the testator. 2. The defendants are the children of his wife's brother, living with their father, having no other relation whatever to the testator. The heirs of Abram Vannorsdall numbered nine. Those of Maria Snyder numbered three. And the children of said William Van Deventer numbered two, showing the necessity for a per capita division of the property, for the direction given by the testator, is, "to be divided equally among each of the heirs above named." 4. To apply this quotation to the children of William Van Deventer alone, appears the more absurd upon the development of the facts that he had but two children, while the unequal number of the three sets of heirs would seem to make it certain

beyond controversy, that in the testator's own mind he embraced them all in the words, "equally between each of the heirs above named," and the last four words of this quotation would seem to demonstrate in addition to the considerations above suggested that the testator had reference to the three sets of heirs, all named in the preceding half dozen lines of the will. 5. The fact that his only heirs at law lived in the county of Ontario, in this state, and in the state of Ohio, offers no possible reason for changing the obvious intention of the will, for distant relatives are not unfrequently remembered with kindness, while those nearer by, are sometimes the occasion of dissension. But whatever the ingenuity of counsel may suggest on this point, in the absence of any reason but this simple fact, it is certainly enough that the testator does *give* to these "strangers to his blood" the same proportion of his estate that he does to those who are his heirs at law. The ties of consanguinity are not so easily severed, by state or county lines, particularly in a case where the only sister of the testator resided in an adjoining county and his only brother had removed from his neighborhood only twelve years before the death of the testator. These heirs at law might complain of the proximity of these strangers to the testator; that perhaps undue influence may have been used to induce the testator to make any devise to these defendants, and this, it seems, can be the only argument to be deduced from the relative location of these parties at the time of the making of this will. 6. The state of facts agreed upon between the parties, and as presented by the case herein, precludes all idea of any reason in the mind of the testator for disinheriting his heirs at law; no prejudice, disagreement or other cause is pretended.

IV. It is a well established rule of law that such construction should be put upon a will as will give effect to all its provisions. And, other things being equal, that

construction should be sustained which favors those who would be the natural recipients of his bounty; therefore, if in this case the court should find the arguments in favor of the construction put upon the will by the plaintiffs, and those of the defendants equally balanced, it would be the duty of the court to decide in favor of the plaintiffs. (*Redfield on Wills*, 445, § 2. *Areson* v. *Areson*, 3 *Denio*, 460, 461.)

V. It has been often held that where the intention of the testator is apparent upon the whole will taken together, the court must give such a construction as will support the intent, even against strict grammatical construction of the words. And, to effect this, words and limitations may be transposed, supplied or rejected. (*Pond* v. *Bergh*, 10 *Paige*, 140.) As to giving effect to every part of the will, see *Christie* v. *Phyfe*, (19 *N. Y. Rep.* 348.) Also cases cited in *5th Abbott's Digest*, p. 382, subd. 240, 241. *Redfield on Wills*, p. 452, § 15.

VI. The court should surround itself with all the material facts and circumstances which surrounded the testator at the time of the making of this will, and occupy as nearly as possible his position. (*Blossom* v. *Griffin*, 13 *N. Y. Rep.* 575, 576.)

VII. The devise to the heirs of William Van Deventer is void. William Van Deventer, at the time of the making of the will, was and is still living. A general devise to the heirs of a living person but not referred to in the will as such, is void. (*Heard* v. *Horton*, 1 *Denio*, 165.)

The principle involved in the maxim "*nemo est hœres viventis*" should be applied with strictness to this case.

*T. R. Strong*, for the defendants. I. The question presented is, whether the plaintiffs, part of whom are the legal heirs of Abram Vannorsdall, deceased, and the others the legal heirs of Maria Snyder, deceased, under the will of Jacob Vannorsdall, take an interest as devisees in the real estate devised.

II. The decision of this question must turn wholly upon the construction which shall be given by the court to the language of the will, as to the intention of the testator to devise them an interest. Mere conjecture as to his intention; any views as to what would have been proper, cannot be regarded; the language of the will must clearly express, or import, an intention to give them an interest, or they take none under the will. (*Hyatt* v. *Pugsley*, 23 *Barb.* 285. *Bunner* v. *Storm*, 1 *Sandf. Ch.* 357, *and cases cited. Mann* v. *Mann*, 14 *John.* 1.)

III. The language of the will does not express, or import, an intention of the testator to devise to the plaintiffs an interest in the real estate, and a construction of the will, finding such an intention, would be wholly unwarranted. By the third clause of the will, the testator gives to his wife Elizabeth, " *all* my real estate, viz. my farm on which I reside, and my house and lot in the vallage of Tuscarora, *during her lifetime.*" By the fourth and fifth clauses, the testator expresses : " Fourth, I give and bequeath to the legal heirs of my brother, Abram Vannorsdall, deceased ; Fifth, and the legal heirs of my sister Maria Snyder, deceased." This is the whole of the fourth and fifth clauses. No *subject* of gift is mentioned, or referred to, in them. Those clauses must, therefore, necessarily fail of operation, as incomplete in not designating, or indicating any subject, leaving the intention, or mind, of the testator, in that respect, wholly unexpressed and undiscoverable, unless the defect is supplied in some other part of the will. There is nothing in the previous parts of the will, which affords any light as to *what* the testator intended to give to the heirs of his brother Abram, or the heirs of his sister Maria, and·if the will contains any evidence on that subject, it is to be found in the sixth clause, which is in these words: " Sixth, I give and bequeath to the heirs of my brother-in-law, William Van Deventer, *all* my real estate *at the death of my wife*, Elizabeth, to be divided equally between each·

of the heirs above named, after the decease of my wife Elizabeth Vannorsdall." It will. be observed that this clause is complete of itself, and independent of all others, and that it is perfectly clear and unambiguous. It gives to the heirs of the testator's brother-in-law, William Van Deventer, " *all* my real estate at the *death of my wife, Elizabeth.*" He had by the previous third clause given *all* his real estate to *his wife for life,* and then he adds, "to be divided equally between each of the heirs above named, after the decease of my wife, Elizabeth Vannorsdall." Who are intended by the "heirs above named," in the sixth clause? Are the heirs mentioned in the fourth and fifth clauses, as well as in the sixth clause, included in that phrase? The answer is obvious; the sixth clause is independent of the fourth and fifth clauses; it disposes of *all* the real estate left undisposed of by the third clause, leaving none for the fourth and fifth to operate upon, thereby proving that the fourth and fifth were not intended to embrace it; and then provides for a division, after the death of the wife, equally between each of the heirs above named, referring, manifestly, to those heirs to whom by the previous part of the clause it was given, for it could be divided between no other than the owners. This shows there is no ground for even a reasonable conjecture, that the testator in the sixth clause referred to any other heirs than the heirs of William Van Deventer. (*See Hyatt* v. *Pugsley,* 23 *Barb.* 285.) A construction which would make the words "heirs above named," include all the heirs in the fourth, fifth and sixth clauses, would defeat the devise in the sixth clause as a devise of *all* the real estate to the heirs of William Van Deventer, at the death of his wife Elizabeth, or make the clause repugnant to itself. While in the former part of the clause the devise is in terms to the heirs of William Van Deventer of "*all* my real estate,". &c. that construction would make the division among, not

only those heirs, but also the heirs named in the two preceding clauses.

IV. William Van Deventer being alive, the word "heirs" in the sixth clause of the will, imports his children. (*Heard* v. *Horton,* 1 *Denio,* 168.) *Campbell* v. *Rawdon,* 18 *N. Y. Rep.* 416.)

V. The defendants are entitled to judgment that they are the sole owners of the said real estate; and that the plaintiffs have no right, title or interest therein.

*By the Court,* E. Darwin Smith, J. The construction of the will of Jacob Vannorsdall, deceased, which the plaintiffs in this submission claim, I think, is the true one. The case states that the plaintiffs claim that in and by the said last will and testament, the real estate mentioned in said will belongs to, and is owned in common by, the said parties thereto, and that each of said parties is the owner of, and entitled to, one fourteenth of said real estate so mentioned and described in said will. The claim of the defendants that in and by said last will and testament they are entitled to, and are the sole owners of, said real estate, and that the plaintiffs have no right, title or interest therein, is, I think, unsound and untenable. The intent of the testator was, I think, very clearly, to give to his wife his real estate during her life, and after her decease to give the same in equal portions to the three classes of persons who should be heirs of his brother Abram, of his sister Maria Snyder, and of his brother-in-law William Van Deventer. The word *heirs,* as used in this will, so far as relates to the heirs of his brother-in-law, Van Deventer, was doubtless used as synonymous with the word *children,* for the will assumes that he was then living, while in respect to his brother Abram and his sister, Maria Snyder, it speaks of them as deceased. In respect to the heirs of his brother and sister there was no contingency in respect to the persons to take, and the estate would vest immedi-

ately upon the decease of the testator. Assuming that the testator meant to give the third interest in the estate to the children of his brother-in-law, Van Deventer, there could be no contingency at the time of the death, and the estate would vest in the children of the defendant Van Deventer, then living, immediately. When a will recognizes the ancestor as living and makes a devise to his heirs, *eo nomine*, this shows that the term is not used in its strict sense, but as meaning the heirs apparent of the ancestor named. (*Heard* v. *Horton*, 1 *Denio*, 168. *Campbell* v. *Rawdon*, 18 *N. Y. Rep.* 418.) To give this will the construction claimed by the defendants and give them the whole estate, would clearly defeat the intent of the testator. In drawing this will, the draftsman obviously meant to classify the devises under the will according to their families. The numbering employed in the will denotes this. *First*, the will provides for the payment of the debts of the testator. *Second*, it gives the personal estate to the wife. *Third*, it gives her the real estate for life. *Fourth*, it gives and bequeaths to the legal heirs of his brother Abram. *Fifth*, to the legal heirs of his sister Maria. *Sixth*, to the heirs of his brother-in-law, William Van Deventer, all his real estate at the death of his wife Elizabeth, to be divided equally between each of the heirs above named, after the decease of his said wife. The "heirs" above named means the heirs named in the divisions numbered 4th, 5th and 6th. The property given is suspended in the two former classes, so that it may be mentioned and described with its incidents only once. Nothing, otherwise, is given to the heirs named in numbers 4 and 5, and those provisions would be entirely inoperative and surplusage. These two classes were named in the will for some purpose, and we must so construe the will as to give operation and effect to every part of it if possible. The repetition of the words, "I give and bequeath" in the 6th subdivision is simply surplusage or

repetition, without meaning or necessity, inserted by the draftsman without considering that words sufficient to devise the estate were contained in the 4th division evidently to apply to what should come after it. This was obviously overlooked by the draftsman, as he turned over the sheet in writing the 'will which was exhibited to us on the argument. There can be, we think, no doubt what the real intent of the testator was, in making this will, and that must control, however inartificially the will may be drawn or worded.

Judgment should be given in conformity with these views, declaring that each of the parties has an equal interest of one fourteenth of the estate.

Judgment accordingly.

