ANSON HEATH, Respondent, *v.* JEFFERSON S. HEWITT, Appellant.

While as a general rule a conveyance to the heirs of a person living is void for uncertainty, as until his death it cannot be ascertained who will be his heirs, when it is apparent from the instrument itself and the surrounding circumstances that in using the word heirs the grantor meant children, the courts will so construe it and thus give effect to the instrument.

B. conveyed certain premises to "the heirs" of his son W., "to be equally divided among them," reserving the use thereof to himself and his wife for life and after the death of both of them to W. for life. The conveyance was also made subject to a judgment, the amount of which the deed stated. W. thereby agreed to pay. At the date of said instrument W. had eight children and three were born thereafter, all of whom survived the grantor, his wife and W. In an action brought by one of the children, who was alive when the deed was executed, to recover an undivided one-eleventh of said lands, *held*, that the word "heirs" in

said deed was used as synonomous with children, and so that the deed was not void for uncertainty, and that plaintiff was entitled to recover. Reported below. 49 Hun, 12.

(Submitted April 20, 1891; decided June 2, 1891.)

Appeal from order of the General Term of the Supreme Court in the fifth judicial department, made the first Tuesday of June, 1888, which reversed a judgment in favor of defendant entered upon the report of a referee and granted a new trial.

This action was brought to recover one equal undivided eleventh part of certain lands described in the complaint.

The plaintiff asserted title by virtue of the following instrument :

" This indenture, made this twenty-eighth day of April one thousand, eight hundred and forty-six, between Benjamin Heath, of Locke, Cayuga county, N. Y., of the first part, and the heirs of Warren Heath, of the same place, to be equally divided among them, of the second part,

" *Witnesseth*, That the said party of the first part, for and in consideration of two hundred and fifty dollars, does grant, bargain, sell, confirm, unto the said party of the second part and to their heirs and assigns forever, all that certain piece or parcel of land situate on Lot No. thirty-three, in the township of Locke, bounded as follows :　On the north and west by lands owned by the heirs of Salmon Heath, deceased, on the south and south-west by the center of the highway and on the east by lands owned by the said Benjamin Heath, containing about thirteen acres of land, being the same premises deeded to the said party of the first part, by Harvey Heath and wife, as by reference to said deed, (Book 77, p. 619) will more fully appear, excepting and reserving to myself the whole use and absolute control of the said premises during my natural life, and in case my wife, Naamah, should outlive me, to her during her natural life, and after her decease to my son, Warren, during his natural life.　And further, this conveyance is made subject to a certain judgment rendered in favor of Jonas Rude, of two hundred and fifty dollars, the amount of which judgment the said

Warren hereby agrees to pay, together with all and singular the hereditaments and appurtenances thereunto belonging or in any wise appertaining, excepting the reserves above mentioned, to have and to hold the said premises above described to the said party of the second part their heirs and assigns forever, and the said party of the first part for his heirs, does covenant, grant, promise and agree, to and with the said party of the second part, his heirs and assigns the above bargained premises against all and every person or persons whatsoever lawfully and equitably claiming or to claim the whole or any part thereof forever to warrant and defend.

"*In witness whereof*, The said party of the first part has hereunto set his hand and seal the ·day and year first above written.

"Nota Bene. 2nd space from top the words ' the heirs,' interlined before signing, also 5th space from bottom the words, ' excepting the reserves above mentioned.'

his

" BENJAMIN  x  HEATH.   [L. s.] "

mark

Warren Heath was a son of Benjamin Heath, the grantor, and at the date of the instrument had eight children among whom was the plaintiff; thereafter three children were born to him; and at the time of the commencement of this action all of his children were living.

After the death of Benjamin Heath and his widow, Warren Heath entered into possession of the land described in the deed, and so continued until January 22, 1868, under claim of title as life tenant under the instrument granted. On the day last named Warren Heath and his wife for a valuable consideration, quit-claimed all their right, title and interest, in and to such premises to Harvey Heath. March 1, 1871, Harvey Heath and wife by a warranty deed conveyed said lands to Jefferson S. Hewitt the defendant in this action, who subsequently went into posession thereof under said deed, and so continued up to the time of the trial of this action. Warren Heath died in 1886·

The referee found as a conclusion of law, that the deed from Benjamin Heath to " the heirs at law of Warren Heath," who

was living, was void for uncertainty as to who were the grantees, and directed judgment to be entered dismissing the complaint with costs.

*S. Edward Day* and *H. Greenfield* for appellant. The alleged deed is void. (1 Devlin on Deeds, 162, § 185; *Rivard* v. *Gisenhof*, 35 Hun, 247; *Morris* v. *Stephens*, 46 Penn. St. 200; *Hall* v. *Leonard*, 1 Pick. 27; *Ives* v. *Van Auken*, 34 Barb. 566; *Jackson* v. *Phipps*, 12 Johns. 418; *Gifford* v. *Corrigan*, 105 N. Y. 223.) The will passed no title to the lands described in the complaint, because those lands were not owned by the testator at the time the will was executed. (10 Paige, 150; 33 N. Y. 558; 54 id. 83; 52 id. 450; 2 R. S. 57, § 5; 9 Paige, 649; 14 Barb. 203; 19 id. 484.) The only remaining questions arise on exceptions to the referee's report. The first and second of these exceptions are to questions of fact. They are not reviewable, as the case contains no certificate that all the evidence is included therein. (*Porter* v. *Smith*, 107 N. Y. 531.)

*W. E. Hughitt* and *W. W. Hare* for respondent. The deed from Benjamin Heath to " the heirs of Warren Heath " was properly executed and delivered. (*Ver Plank* v. *Arden*, 12 Johns. 536; *Shrader* v. *Banker*, 65 Barb. 608, 615.) A most liberal construction will be given a deed in order to carry out the intention of the grantor. (*Jackson* v. *Blodgett*, 16 Johns. 172; *Kilmer* v. *Wilson*, 49 Barb. 86–88; *Tucker* v. *Weeks*, 52 N. Y. 638; *French* v. *Carhart*, 1 id. 96; *Bennett* v. *Culver*, 97 id. 256; *Coleman* v. *Beach*, Id. 554; 3 R. S. [7th ed.] 2205, § 2; *Heard* v. *Horton*, 1 Den. 165; *Vannorsdall* v. *Van Deventer*, 51 Barb. 137; *Craig* v. *Wills*, 11 N. Y. 323; *In W. P. I. Co.*, 45 id. 703; 24 Hun, 430; *Beardsley* v. *Hotchkiss*, 96 N. Y. 213.) This is a future estate, within the meaning of the statute, and it is not now necessary that it follow a preceding estate. It is contingent as to whom it goes, to be made certain upon the death of Warren. (2 R. S. chap. 1, §§ 13, 30; *Moore* v. *Littel*, 41 N. Y. 72; *Sheridan* v. *House*,

4 Keyes, 569.) There could be no adverse possession until the execution of the deed from Warren Heath and wife to Harvey Heath, January 22, 1868. (*In re Parks*, 73 N. Y. 560–566 ; *Christie* v. *Gage*, 71 id. 189 ; *Devyr* v. *Shaefer*, 55 id. 446.)

. PARKER, J. Appellant's contention is that in as much as Warren Heath was living, a grant to his heirs was void for uncertainty, as there were no persons in being who could take under that description. It is essential to the validity of a grant that the parties be named in the deed, or so plainly designated as to distinguish them with certainty, and it is asserted that as there were no heirs of Warren Heath at the date of the deed "because no one can be heir during the life of his ancestor," (Broom's Legal Maxims, § 383), the grantees were neither named nor designated. Our attention is called to the rule laid down in Cruise's Digest (title 29, chap. 3) where it is said to be "a rule of the common law that no inheritance can vest nor any person be the actual complete heir of another till the ancestor is previously dead ; *nemo est haeres viventis.*"

In *Hall* v. *Leonard* (1 Pick. 27) a grant of land to the heirs of A. B. was held to be void, and in a discussion of the question the court said "no case has been found to support a grant to a man's heirs he being living at the time of the grant."

So in *Morris* v. *Stephens* (46 Pa. St. 200) a conveyance by a grantor to "the heirs of his son Andrew" who was then living was held to be void for uncertainty.

In *Huss* v. *Stephens* (51 Pa. St. 282) the grantor of the deed under consideration was also the grantor in the instrument before the court in *Morris* v. *Stephens* (*supra*).

In the *Morris* case the deed described the grantees as heirs of Andrew Lantz, Jun., and the consideration expressed was one dollar in money and "the natural love and affection which the grantor hath for said heirs." While in the *Huss* case the grantees were described in the same manner, but the consideration expressed was one dollar and "the natural love and affection he hath for his grandchildren." The difference in

the two cases being, that in the latter the word grandchildren. in the consideration clause appears in the place of the word heirs in the former.

In the first case the deed was held to be void for uncertainty. But the second was declared to constitute a valid grant, because the word grandchildren defined what he meant by the use of the word heirs in describing the grantees. It enabled the court to ascertain that the word "heirs" was not used in its technical sense, but that by it the grantor intended to describe the children of Andrew Lantz, Jun.

In *Rivard* v. *Gisenhof* (35 Hun, 247) the court asserted the general rule that a grant "to the heirs" of a living person is void for uncertainty.

And in *Umfreville* v. *Keeler* (1 T. & C. 486), the court recognizes the doctrine of the cases cited but held that a deed to "E. U. wife of A. U. and her heirs the children of said A. U." was valid and operated to pass title to the children, because it was manifestly the intention of the grantor to confine the interest conveyed to the children of the parties named notwithstanding the use of the word heirs.

The legal and well understood meaning of the word heir, is, the one upon whom is cast an estate of inheritance, upon the death of the owner, and it follows that this person is uncertain until death occurs; for until that event, it can never be known to whom the estate will fall. Hence the doctrine of the cases referred to and which so far as we have observed stand unquestioned.

If then the word heirs in this instrument be held to have been employed in its technical sense it would follow that the deed should be declared void for uncertainty.

The courts of this state do not appear to have been called upon in the case of a deed to determine whether, in the light of other facts appearing in the deed and the circumstances surrounding its execution, the word heirs may not be construed as meaning children of such living person, if it appears that such was manifestly the intention of the grantor. But in the construction of wills the question has been considered.

In *Heard* v. *Horton* (1 Denio, 165) the testator, after making sundry bequests and devises, and among others to his son J. B. H., devised the residue of his real estate, without words of perpetuity to his son J. H., on condition that he should pay his debts ; and added, that if J. H. should die without issue at his decease, the real estate should be equally divided amongst the heirs of his son J. B. H. ; it was held that the words " heirs of J. B. H." he having children living at the time of making the will, sufficiently designated these children as the executory devisees, though J. B. H. was himself then living, he being referred to in the will as a living person. Judge BEARDSLEY in delivering the opinion of the court said, " where the will recognizes the ancestor as living, and makes a devise to his heir, *eo nomine*, this shows that the term was not used in the strictest sense, but as meaning the heir apparent of the ancestor named."

Now in this case Warren Heath was living at the time of the making of the deed, which fact sufficiently appears in the deed because the grantor reserved to him a life estate in the lands sought to be conveyed, and he had children living, among whom was the plaintiff in this action.

In *Vannorsdall* v. *Van Deventer* (51 Barb. 137) the devise was to the legal heirs of his (testator's) brother A., deceased, and to the legal heirs of his sister M., deceased, and to the heirs of his brother-in-law W. V. At testator's death W. V. was still living. It was held that the word heirs, in so far as it related to the heirs of his brother-in-law W. V., was used as synonymous with the word children, for the will assumes that he was then living ; that the children of W. V. were entitled to take, and that the estate became vested in them immediately upon the death of the testator.

These cases were cited with approval in *Cushman* v. *Horton* (59 N. Y. 149), in which the rule is laid down that to the word heirs must be given the ordinary legal meaning unless it appears the testator used the word in other than the primary legal sense, in which event courts should give effect to the intention of the testator.

If it be said that both in England and in this country, the courts have more generally supported indefinite forms of transmission by will than by grant, because in the case of wills they are intended to go into effect at a future time and to provide for future and uncertain events, not only for individuals named, but also for described classes of donees to be ascertained by evidence at the death of the testator or afterwards, while in the case of the present conveyance the very nature of the act excludes the necessity of indefiniteness, it may be answered that this difference is not of moment, in determining whether the particular rule of construction adopted in the cases cited is applicable here. The determination made was that if from the whole will it was manifest that in using the word heirs the testator meant children, the court should so construe it, and thus give effect to the intention of the testator.

But the statute also requires the court to give effect to the intent of the grantor in making the conveyance before us, if it may be done consistently with the rules of law. It provides that " in the construction of every instrument creating or conveying, or authorizing the creation or conveyance of any estate, or interest in lands, it shall be the duty of courts of justice to carry into effect the intent of the parties so far as such intent can be collected from the whole instrument and is consistent with the rules of law." (1 R. S. 699, § 2 [Edmond's ed.].) As the intent of the parties is to govern in grants as well as wills, there seems to be no basis on which to found a distinction between them as to the interpretation to be given to the word " heirs," if in the one case as in the other, it appears that it was not the intention of the grantor or testator to use it in its ordinary legal sense.

We are then to ascertain whether the grantor intended by the words " the heirs of Warren Heath " to designate and describe the children of Warren Heath as his grantees.

It has been determined, in many cases, that the word heirs, notwithstanding its primary and well understood meaning, is susceptible of more than one interpretation. (*Heard* v. *Horton ; Vannorsdall* v. *Van Deventer ; Cushman* v. *Horton, supra.*)

And in determining which must be here given we may look at the surrounding circumstances existing when the contract was entered into, the situation of the parties, and the subject-matter of the instrument. (*French* v. *Carhart*, 1 N. Y. 96; *Coleman* v. *Beach*, 97 id. 545–553.)

At the date of the instrument Warren Heath had eight children, who were also the grandchildren of Benjamin Heath, the grantor. Warren Heath was not only living, but the deed distinctly recognizes that fact, in that first it recites that the " conveyance is made subject to a certain judgment rendered in favor of Jonas Rude of $250, the amount of which judgment the said Warren hereby agrees to pay ; " and, second, the instrument undertakes to reserve " the whole use and absolute control of the said premises ＊ ＊ ＊ to my son Warren during his life."

These facts bring the question before us within the rule laid down in *Heard* v. *Horton* and other cases cited, *supra*, that when a will recognizes the ancestor as living, and makes a devise to his heir in that name, it shows that the term was used as meaning the heir apparent of the ancestor named, or as stated in the *Vannorsdall* case that the word heirs was used as synonymous with the word children.

That he intended to describe the children of his son Warren as his grantees, is further supported by the fact that the grant is, by its terms immediate, the grantor undertaking to reserve a life estate in the premises to himself and to others for their lives. The conveyance was not to Warren Heath for life and after his death to his heirs, but it constituted a present grant to persons whom the grantor designated as the heirs of Warren Heath, with an attempted reservation for the benefit of Warren, and the only persons answering that description in any sense in which the word is employed, whether technically or popularly, would be the children of Warren.

The order should be affirmed and judgment absolute rendered against the appellant, with costs.

All concur, except Bradley and Haight, JJ., not sitting.

Order affirmed and judgment absolute in favor of plaintiff.