MARGARETTA W. WALLACE et al., as Executors of
MARGARETTA M. DIEHL, Deceased, Appellants, *v.*
CHARLES W. DIEHL et al., Respondents, and SUSAN D.
EDSON, Appellant.

Will — construction of gift to life tenant with power to give,
devise and bequeath the same to "heirs" of testatrix to be
selected by life tenant — meaning of term "heirs" in such
case.

1. Although in the case of a devise to "heirs" upon the death of
a life tenant, and especially in the case of a gift over upon death
without heirs, the term "heirs" may be confined to such heirs as
are issue or descendants, in other words, to heirs of the body, that
term does not include all descendants, however remote, who are
not heirs because their parents or ancestors are still living.

2. A testatrix by the 11th paragraph of her will gave certain
property to her daughter during the term of her natural life "with
further power to give, devise and bequeath upon her death by Last
Will and Testament duly executed, to such of my heirs as she may
prefer." *Held*, that the term "heirs" is not to be extended to
include issue or descendants who are not heirs of the testatrix; that
the power of appointment so given must be exercised in favor of
the heirs of testatrix, who are to be ascertained at the death of the
life tenant and donee of the power.

3. Where a testatrix bequeathed a sum to a granddaughter "if
she survive me, and I hereby give and bequeath such sum of Five
Thousand Dollars to her," the legacy lapsed and fell into and
became part of the residuary estate on the death of the grand-
daughter before the testatrix.

*Wallace* v. *Diehl*, 134 App. Div. 942, modified.

(Argued February 14, 1911; decided May 9, 1911.)

APPEAL by plaintiffs and by the defendant appellant
from a final judgment entered May 3, 1910, upon an
order of the Appellate Division of the Supreme Court
in the second judicial department, which affirmed an
interlocutory judgment of Special Term in an action
for the construction of certain clauses of the will of
Margaretta M. Diehl, deceased.

The facts, so far as material, are stated in the dissenting opinion.

*Ward B. Chamberlin* and *G. F. Chamberlin* for appellants. The word "heirs" in the 11th paragraph of the will was used in the sense of issue or descendants. (*Matter of Cramer*, 59 App. Div. 553; *Bundy* v. *Bundy*, 38 N. Y. 419; *Johnson* v. *Brasington*, 156 N. Y. 181; *N. Y. L. Ins. & T. Co.* v. *Viele*, 161 N. Y. 11; *Lawton* v. *Corlies*, 127 N. Y. 108.) The legacy bequeathed to Marguerite Wetherill Buckwell lapses and falls into the residuary estate. (*Pimel* v. *Betjemann*, 183 N. Y. 194; *Lytle* v. *Beveridge*, 58 N. Y. 598; *Phillips* v. *Davies*, 92 N. Y. 199.)

*John Ewen* for defendant, appellant. The word "heirs," when used in a will or other instrument, is to be understood in its primary or legal sense, unless it appears from other parts of the instrument that it was used in the more restricted sense of "children," "heirs of the body" or "descendants." (*Johnson* v. *Brasington*, 156 N. Y. 181; *Cushman* v. *Horton*, 59 N. Y. 149; *Bodine* v. *Brown*, 12 App. Div. 335; 154 N. Y. 778; *Matter of Russell*, 168 N. Y. 169; *Newcomb* v. *Lush*, 84 Hun, 254; 155 N. Y. 687.) The bequest to the testatrix's granddaughter, Marguerite Wetherill Buckwell, lapsed upon her death by the express terms of the will and codicils, and did not vest in her daughter. (*Pimel* v. *Betjemann*, 183 N. Y. 194; *Matter of Depeirris*, 110 App. Div. 421.)

*Frederick A. Drake* for Isabel B. Buckwell et al., respondents. The legacy bequeathed to Marguerite Wetherill Buckwell did not lapse but descended under the statute to the infant defendant Isabel Bingham Buckwell. (*Trask* v. *Sturges*, 170 N. Y. 492; *Roe* v. *Vingut*, 177 N. Y. 212; *Van Nostrand* v. *Moore*, 52 N. Y. 20; *Parks* v. *Parks*, 9 Paige, 124; 30 Am. & Eng. Ency. of Law [2d ed.], 687; 2 R. S. 66, § 52; *Roberts* v. *Bosworth*,

107 App. Div. 511; *Matter of Hafner,* 45 App. Div. 549; *Barnes* v. *Huson,* 60 Barb. 598; *Moses* v. *Allen,* 81 Maine, 268; *Bishop* v. *Bishop,* 4 Hill, 138; *Matter of Disney,* 190 N. Y. 128; *Pimel* v. *Betjemann,* 183 N. Y. 199; *Matter of Depeirris,* 110 App. Div. 422; *Matter of Wells,* 113 N. Y. 400.) The word "heirs," in the 11th paragraph of the will, was intended to include the issue of any child or descendant of the testatrix who might be living at the time the power of appointment was exercised. (*Matter of Smith,* 131 N. Y. 239; *Matter of Russell,* 168 N. Y. 169; *Fuller* v. *Martin,* 96 Ky. 500; *Teed* v. *Morton,* 60 N. Y. 503; *Goebel* v. *Wolf,* 113 N. Y. 405.)

*George M. Pinney, Jr.,* for Lillian Purcell, respondent.

CULLEN, Ch. J. I concur in the opinion of my brother COLLIN, save in one respect. The courts below have held that the power of appointment given in the eleventh clause of the testatrix's will to Mrs. Wallace "to give, devise and bequeath upon her death by Last Will and Testament duly executed, to such of my heirs as she may prefer," may be exercised in favor of any issue or descendant of the testator. I can find no authority in the decided cases for the extension of the term "heir" to include issue or descendants who are not heirs. Not one of the authorities cited in support of that contention, in my opinion, sustains it. Before entering on a review of the cases the distinction must be borne in mind between two radically different propositions: *First,* that in the case of a devise to "heirs" upon the death of a life tenant, and especially in the case of a gift over upon death without heirs, the term "heirs" may be confined to such heirs as are issue or descendants; in other words, to heirs of the body. *Second,* the proposition which it is necessary to maintain to support the decisions below, that the term "heirs" may include all descendants, however remote, though not heirs because their parents or ancestors are still living. This second proposition, as I have

said, I can find no authority to sustain.  Now, to refer
to the cases cited by my brother.  *Matter of Cramer* (170
N. Y. 271) is authority for the first proposition, not the
second.  In that case the word "heirs" was limited to
heirs of the body and death without heirs construed as a
gift over without heirs who were descendants or heirs of
the body.  *Snider* v. *Snider* (160 N. Y. 151) decides
exactly the same proposition.  *Johnson* v. *Brasington*
(156 N. Y. 181) the same.  So with *Kiah* v. *Grenier* (56
N. Y. 220).  In *Heath* v. *Hewitt* (127 N. Y. 166), which
was the case of a gift to the heirs of a living person,
Judge PARKER, writing for the court, said the devise
was to the children, but this was not because the word
"heirs" could be construed as meaning children, but
because it was the children which happened in that case
to be the persons who would have been the heirs of
the living person had he died at that time.  This plainly
appears, because the case was decided on the authority of
*Heard* v. *Horton* (1 Denio, 165), where the general
rule is stated that "a devise to the heirs of one who
is stated in the will to be living is a valid disposition
in favor of those who would be his heirs if he should then
die."  *Livingston* v. *Greene* (52 N. Y. 118) seems to have
no application to the case before us.  In *Thurber* v.
*Chambers* (66 N. Y. 42) the term "heirs" was construed
in its legal meaning so as to include all persons entitled
to succeed in case of intestacy.  So the decision has no
bearing on the question before us.  But Judge CHURCH
does remark in his opinion: "The word 'heirs' will,
however, be construed to mean *children* when, from the
whole will, such appears to have been the intention of the
testator (53 N. Y. 233, 238; 38 id. 410)."  (p. 47.)  A refer-
ence to the two cases Judge CHURCH cites plainly indicates
his meaning that the term "heirs" will be limited to
children or other issue and not extended to heirs generally.
*Scott* v. *Guernsey* (48 N. Y. 106) is precisely to the same
effect and in the opinion it is said: "The testator has used

the word 'heirs' in the sense of children." Now, such a statement was correct, though possibly misleading, because in that case children were the heirs. Without discussing the provisions of the will at length I can simply say I cannot find any indication of a desire of the testatrix to pass over the nearest in line of her descendants or heirs in favor of more remote issue who might not be born till a generation after she was in her grave. Certainly there is no such clear indication as would warrant us in departing from the proper meaning of the word "heirs."

But I am of opinion that the heirs of the testatrix were to be ascertained not at her death, but at the death of the life tenant, to whom she gave the power of appointment. It should be conceded that the general rule is that a gift to a testator's heirs, though after the death of a life tenant, is a gift to those who were the testator's heirs at law at the time of his decease. But the will may disclose an intention that they are to be ascertained at a different period. In some of the cases cited as requiring a class to be ascertained at the death of the testator, the language is too plain to admit of discussion. In *Delaney* v. *McCormack* (88 N. Y. 174) the provision was "to distribute the proceeds thereof amongst my next of kin as personal estate, according to the laws of the State of New York for the distribution of intestate personal estate." There the language of the will was imperative. There appears to have been no claim that the next of kin should have been ascertained at a later period. In *Wadsworth* v. *Murray* (161 N. Y. 274) the provision was that the property should "descend to and vest in my heirs at law in the same manner that it would have descended to and vested in them if this will had not been made." (p. 282.) Of course, if the will had not been made the property would have passed as in case of intestacy. The general rule is stated in 2 Jarman on Wills (6th ed. p. 981, note 1): "*Prima facie* the next of kin at the death of the

testator are meant; and the indication should be clear to overcome the presumption." But in several cases indications have been held sufficiently clear to show that the testator meant the class to be ascertained at the death of a life tenant or of a primary devisee. Such cases are *Wood* v. *Bullard* (151 Mass. 324); *Welch* v. *Brimmer* (169 Mass. 204), and *Matter of Bowers* (109 App. Div. 566; affd., on op. below, 184 N. Y. 574).

It must be borne in mind that in the case before us there is no present gift of the property, the subject of the eleventh clause, to the heirs of the testatrix. They take solely by the exercise of the power of appointment dependent entirely on the favor of the life tenant, who might give all to one and exclude the rest. It was not a gift to a class, but the designation of a class among which the life tenant was to exercise her favor. It is in this respect that I think the case before us is to be distinguished from an ordinary gift by the testatrix herself. There the class to be benefited would be known to the testator and take under the will as a recipient of the testator's bounty, Here, though it was not the life tenant's bounty, it was the life tenant's favor to which any appointee would be indebted for what he might get. That favor was to be exercised by the life tenant at her decease and it seems to me that the class was to be ascertained at the same time. But there is one further consideration which is, to my mind, controlling. It is true that the life tenant has no children, but she might have had children after the testatrix's death and, for aught we know, even after the present time. A construction of the will which would require the heirs of the testatrix to be ascertained at her death would preclude the life tenant from exercising the power of appointment over what may be not improperly termed her own share of her mother's estate in favor of her own children. Certainly, this testatrix never intended this.

I think the judgment of the Appellate Division and of

the Special Term should be further modified so as to hold that the power of appointment given in the eleventh clause of the will must be exercised in favor of the heirs of the testator; such heirs, however, to be ascertained at the death of the life tenant and donee of the power.

COLLIN, J. (dissenting in part). The action is to procure a judgment establishing the meaning of certain provisions of the will of Margaretta M. Diehl and settling the accounts of the plaintiffs. Upon the trial at Special Term, by an interlocutory judgment unanimously affirmed, the disputed parts of the will were given construction and the plaintiffs directed to account. The action thereupon proceeded to the final judgment appealed from.

The testatrix died in January, 1908, leaving surviving as her sole heirs at law and next of kin three sons, Charles W., Thomas and William, and three daughters, Margaretta Wetherill Wallace, Mary E. Smith and Susan D. Edson. The original will and the three codicils were probated April 13, 1908. They are without unusual or involved features, and a brief general statement of their contents will suffice. The original will by its second paragraph gave to Charles, in case he survived the testatrix, certain shares of corporate stock, and to the executors the sum of $10,000 in trust to purchase him an annuity. By its third paragraph it gave to Thomas, in case he survived her, all promissory notes belonging to the estate of her deceased husband under process of collection by him; also his indebtedness to her and to the executors $10,000 in trust to purchase an annuity for him. Each paragraph provided that if the son named therein did not survive the testatrix the bequests should form a part of the residue of the estate. The fourth paragraph devised to William certain lands in St. Paul, Minnesota. It was, however, revoked by a codicil which devised to him all properties in the state of Minnesota owned by the testatrix.

By the fifth paragraph testatrix gave to her daughter Mary E. Smith all of her diamonds and the sum of $500; and to her grandson, Edward I. Smith, certain paintings and engravings. The sixth and seventh paragraphs were revoked by the codicils. The eighth paragraph gave to the daughter Margaretta Wetherill Wallace a real estate mortgage of $5,000, and to the daughter Susan Douglas Edson real property known as No. 12 Clinton avenue, in the borough of Richmond, New York city. The ninth paragraph directed the executors to divide the rest and residue into two equal parts, with power to convert it into cash, one of which parts the tenth paragraph gave to her daughter, the appellant, Susan D. Edson, and the other was disposed of in the following language: "Eleventh. I give, devise and bequeath unto my daughter, Margaretta Wetherill Wallace, if living, the other part of my residuary estate during the term of her natural life, with power to collect and apply the income therefrom for her own use to invest and reinvest the principal according to her judgment, in real estate or in any other investment except railroad securities and with further power to give, devise and bequeath upon her death by Last Will and Testament duly executed, to such of my heirs as she may prefer." A question presented to us is, does the word "heirs" therein mean those who were the testatrix's legal or actual heirs, or those who are her descendants at the time the legatee exercises the power of appointment. The courts below have held that the legatee may effectively exercise the power of appointment for the benefit of any descendants of the testatrix.

The sixth paragraph of the will, revoked by a codicil, gave to the executors $5,000 in trust to establish a comfortable home for Marguerite Wetherill Buckwell, a granddaughter of testatrix. The first codicil revoked the sixth paragraph and gave the $5,000 to the executors in trust, to purchase an annuity for the said granddaughter. The second codicil contained the provision : "Whereas

circumstances may arise which may make the purchase of an annuity undesirable, it is my will that said sum of Five Thousand Dollars be paid to my said granddaughter Marguerite Wetherill Buckwell if she survive me, and I hereby give and bequeath such sum of Five Thousand Dollars to her, giving, however, my said executors power to apply said sum of Five Thousand Dollars to the purchase of an annuity in their discretion, for the benefit of my 'said granddaughter Marguerite in like manner as declared with respect to the proceeds of my property in Manhattan, Kansas, given my granddaughter Lilian." The granddaughter died April, 1907, leaving her surviving her daughter, Isabel Bingham Buckwell, her only heir at law and next of kin. The testatrix died, as stated, January 20, 1908. A question presented to us is, did this legacy lapse because of the death of the legatee prior to that of the testatrix. The courts below have held that it did not lapse and become a part of the residuary estate, but vested in Isabel Bingham Buckwell.

*First.* May Margaretta Wetherill Wallace exercise the power of appointment, given by the eleventh paragraph, for the benefit of any descendants of the testatrix? The answer is dictated by the intention of the testatrix. If she intended to confine Mrs. Wallace, in the exercise of the power, to a selection from those of her sons and daughters, her actual heirs, who were living when Mrs. Wallace made her last will and testament, the answer must be in the negative. A testamentary intention declared in a lawful manner and having a legal purpose cannot be thwarted or nullified. When it is declared in plain and unambiguous language, the meaning of which is not made questionable by the context, it must be given effect. A doubt as to the intention must spring from the will itself. When the doubt exists, the intention must be sought through a scrutiny and study of the provisions of the will and a consideration of the relevant and competent facts and circumstances; and while judicial rules

of construction may be called in aid, they may not frustrate the intention. Neither rules of construction nor the technical sense of words can prevail against the superior force of intention, the ascertainment and declaration of which is the whole province and duty of the court.

At the outset, therefore, the inquiry arises as to whether there arises from the language within the entire will a legitimate doubt as to the intention of the testatrix when she used the word "heirs." The word has various meanings. It has the primary and correct meaning of designating those on whom the law, immediately on the death of an owner of real estate, casts the estate therein. Under that meaning it relates only to real estate, and describes the persons appointed by law to succeed to it in cases of intestacy. That meaning the courts will give it without question, unless there is in the will itself language or disposition which suggests that the purpose in the mind of the testator is not thereby fulfilled. It has, however, popular or colloquial meanings and with sensitive flexibility yields easily and quickly from its primary, legal meaning in favor of an inconsistent or opposing intention. Applied to the succession of personal estate it means next of kin. (*Tillman* v. *Davis*, 95 N. Y. 17.) It not infrequently designates children. (*Heath* v. *Hewitt*, 127 N. Y. 166; *Livingston* v. *Greene*, 52 N. Y. 118; *Scott* v. *Guernsey*, 48 N. Y. 106; *Thurber* v. *Chambers*, 66 N. Y. 42.) Legatees and devisees have been designated by it. (*Roland* v. *Miller*, 100 Penn. St. 47; *Matter of Hull*, 30 Misc. Rep. 281; *Plummer* v. *Shepherd*, 94 Md. 466; *Clark* v. *Scott*, 67 Penn. St. 446; *Shapleigh* v. *Shapleigh*, 69 N. H. 577; *Greenwood* v. *Murray*, 28 Minn. 120.) We have, as the intention expressed by the instruments required, given it the meaning of issue or descendants. (*Matter of Cramer*, 170 N. Y. 271; *Snider* v. *Snider*, 160 N. Y. 151; *Johnson* v. *Brasington*, 156 N. Y. 181; *Taggart* v. *Murray*, 53 N. Y. 233; *Kiah* v. *Grenier*, 56 N. Y. 220.) Whenever it reasonably appears that words within

a will were not used in their technical sense, but accord-
ing to a vocabulary of the testator, they are to have the
signification he designed for them if the nature of the
estate which he meant to create is not prohibited by law.
The provisions of the will under consideration indicate
that the testatrix did not intend that the operative exer-
cise of the power of appointment given Mrs. Wallace
depended upon the survival beyond her life of one or more
of her brothers or sisters. The disposition by the testa-
trix of the estate is inconsistent with that intention. She
gave sparingly and cautiously to her children. While
the value of the estate is not made known by the findings,
a very substantial part of it, at least, passed into the rest,
residue and remainder, of which only one-half is given to
a child, Mrs. Edson, who had a son, to whom she could
give that which she had received. We may with reason
and just cause believe that the testatrix did not intend
to compel Mrs. Wallace to hand over or distribute her
estate to those from whom she herself had withheld it.
A careful reading of the provisions in favor of all the sons
and daughters, except Mrs. Edson, is persuasive to the
conclusion that she anxiously intended that an important
part of her estate should not pass under the ownership,
with its power to lose, spend and squander, of her chil-
dren, but should be preserved for the next generation at
least. This conclusion is aided by the fact that she gave
by the will to three of her grandchildren, viz., the son of
Mrs. Smith and two married daughters of Charles. The
findings of the referee establish the fact that Mrs. Wallace
had no children and that there are three other grandchil-
dren, one of whom is the son of Mrs. Edson and two,
Madelaine Diehl and Theodore Diehl, are the children
of Charles. The will shows the testatrix desired that
her property should be deemed a general provision for
the family and that as such the one-half should be dis-
pensed within the family by Mrs. Wallace. Another
fact points to the conclusion that the testatrix did not in

the eleventh paragraph use the word "heirs" in its technical significance. Paragraph twelfth is: "Twelfth: Any real or personal property remaining undisposed of by this my Will, or to which my sons Thomas and Charles or either of them for any reason might otherwise as heir at law or next of kin become entitled, whether under the laws of the State of New York or any other State, shall vest in my said Executors in place of my said sons, and shall be converted by my said Executors into cash, and my Executors are instructed to use the same for the purchase of annuities for each of my said sons Thomas and Charles." The third and only additional use in the will of the word is in the thirteenth paragraph which forfeits the benefit or share of any of her "heirs" who shall legally dispute or contest any of the provisions of the will. The manifest purpose of the testatrix in the twelfth paragraph required that the status of Thomas and Charles against which she was providing should be accurately expressed. If she were in the eleventh or thirteenth paragraph designating only those of that identical status of heir at law or next of kin, she would have used the identical expressions. (*Bundy* v. *Bundy*, 38 N. Y. 410, 422.) It is probable rather than improbable from the thirteenth paragraph, considered by itself, that the testatrix intended the forfeiture therein prescribed to apply to all persons benefited by the will who might legally contest it. Inasmuch as the will raises a doubt as to the intention of the testatrix and, for the reasons stated, fair grounds for holding that she intended that Mrs. Wallace should be free to select from the family the beneficiaries under her will, aid in reaching the correct conclusion may be sought in the established rules of construction. Such a rule is, the courts will with alacrity and satisfaction lay hold of slight expressions as a ground for avoiding a construction or decision which excludes the issue of a deceased child from participation in a general family provision. (*Matter of Paton*, 111 N. Y. 480.) It

is apparent from the will that the general purpose of the testatrix was to include her grandchildren in the distributees of her estate and, the will permitting, we reach the conclusion, in accord with that purpose, that Mrs. Wallace may, in fulfillment of the intention of the testatrix, exercise the power of appointment for the benefit of any descendants of the testatrix.

*Second.* Did the legacy to Marguerite Wetherill Buckwell lapse by reason of her death prior to that of the testatrix? It is argued in the negative that the words "and I hereby give and bequeath such sum of Five Thousand Dollars to her" effect a gift or legacy, absolute and unaffected by the preceding words of the paragraph, upon the principle that when two clauses in a will are irreconcilable, so that they cannot possibly stand together, the one which is posterior in position shall be considered as indicating a subsequent intention, and prevail, unless the general scope of the will leads to a contrary conclusion; and, as a second step in the argument, the statute (2 R. S. 66, sect. 52) providing that whenever a testator gives a legacy to a child who dies during the lifetime of the testator leaving a child who survives the testator, the legacy shall not lapse, but shall vest in the surviving child, is invoked. This position cannot be maintained. The language of the codicil clearly and plainly expresses the intention that the bequest should become effective only in case the legatee survived the testatrix. The words above quoted are not a clause or a bequest independent of the words immediately preceding them.

There are not, within the principle invoked, two disposing clauses. The paragraph is free from contradictory or inconsistent parts and constitutes one disposition. So clear is this that it is enunciation rather than construction to say that the testatrix fearing that the direction to the executors to pay, in case Mrs. Buckwell survived, was not a complete testamentary giving, added the words quoted which were inoperative unless the payment, depending

upon the survivorship, was made. The five thousand dollars was not bequeathed to Mrs. Buckwell within the meaning of the statute (2 R. S. 66, section 52) which, therefore, has no application. The courts below erred in holding that the legacy did not lapse.

As to the other questions presented, we concur in the conclusions of the Appellate Division.

That part of the interlocutory and final judgments adjudging that the legacy of five thousand dollars bequeathed to Marguerite Wetherill Buckwell does not lapse and form a part of the residuary estate of Margaretta M. Diehl, but that said legacy vested in the surviving child of Marguerite Wetherill Buckwell, the defendant Isabel Bingham Buckwell, and that additional part of the final judgment adjudging that the plaintiffs pay to the guardian of the person and property of the defendant Isabel Bingham Buckwell, after security given, the sum of four thousand five hundred dollars, together with the interest or income on the sum of five thousand dollars from the thirteenth day of April, 1909, and that the plaintiffs pay to Frederick A. Drake, Esq., guardian *ad litem* for the infant defendant Isabel Bingham Buckwell the sum of five hundred dollars heretofore allowed to him as guardian *ad litem* out of the said Isabel Bingham Buckwell's share or portion of the estate should be reversed. In all other respects said judgments should be affirmed, with costs to the plaintiffs and to the respondent Lillian Purcell, to be paid out of the estate.

HAIGHT, VANN, WERNER and HISCOCK, JJ., concur with CULLEN, Ch. J.;. GRAY, J., concurs with COLLIN, J.

Judgment of Appellate Division and that of Special Term modified, first, so that instead of declaring that the power of appointment given by the eleventh paragraph of the will of the testatrix may be effectually exercised for the benefit of any issue or descendants of Margaretta M. Diehl, it be adjudged and declared that it may be exercised for the benefit of any of the heirs of said Margaretta

M. Diehl, such heirs to be ascertained at the death of the donee of the power, Margaretta Wetherill Wallace; second, that instead of adjudging that the legacy of $5,000 bequeathed to Marguerite Wetherill Buckwell did not lapse, it be adjudged and declared that said legacy did lapse and fall into and become part of the residuary estate of Margaretta M. Diehl; and the direction that the legacy be paid to the guardian of the person and property of defendant Isabel Bingham Buckwell and Frederick A. Drake, guardian *ad litem*, is reversed; and as modified the said judgments are affirmed, with costs to all parties who have appeared and filed briefs in this court, payable out of the estate.