## STEPHENS vs. VROMAN.

In an action to recover damages against the defendant for setting fire to, and burning the plaintiff's barn, the case turned almost entirely on circumstantial evidence, and it was a leading and material point to establish the description of a gray horse, supposed to have been ridden by the incendiary on the night of the fire. The plaintiff, being absent from home at the time of the fire, had no personal knowledge on the subject, but from information which he said was derived from people residing in the vicinity of the barn, he stated to several witnesses, soon after the fire, that he supposed the man who fired the barn rode a large, gray, logy-traveling horse, dapple gray behind; which description pointed to a certain horse known as the L. horse. On the trial the entire drift of the plaintiff's evidence was to show that on the night in question the defendant had in his possession, and rode, in the direction of the fire, a gray mare belonging to one H., and the description given of her was very different from that of the L. horse. *Held*, that evidence to prove the making of the above statements by the plaintiff, soon after the fire, as to the size, color, and gait of the horse ridden by the incendiary, was competent, and was properly received, as tending to show that the description on which the witnesses finally rested was entirely an after thought, upon discovering the fact that on the night in question the H. mare was in the possession of the defendant.

Admissions and confessions of parties are not by any means conclusive, and not necessarily even *prima facie* evidence of the fact to which they relate.

They may be controlled and overborne by evidence of a higher character, and more commanding weight; but when they relate to a matter material to the issue, they should be received, and the effect to be given to them is wholly with the jury.

If it appears from the declarations themselves, or from evidence *aliunde*, that the party had no personal knowledge of the facts as to which the admission is made, then but little importance is to be attached to them, and the jury will be instructed accordingly.

MOTION by the plaintiff, for a new trial, on exceptions taken at the circuit. The complaint set forth in substance that the plaintiff, on and prior to November 11th, 1850, was in the possession and owner of a barn and its contents, situate in the town of Lenox, and county of Madison, of the value of $2700. That the defendant, on the said 11th day of November, 1850, wrongfully set fire to and burned the said barn, so that said barn and its contents were wholly destroyed, to his damage of $3000. The defendant, in his answer, denied the complaint. The cause came on for trial at the Oneida special circuit, in September,

1853, before Hon. William F. Allen and a jury. It appeared in evidence, among other things, that on the said 11th day of November, 1850, the plaintiff was the owner and possessor of said barn and contents, of the value of $2087, situate in the county of Madison, five and a quarter miles from Durhamville, in the county of Oneida, and that at about the hour of nine o'clock in the evening of that day, the said barn was discovered on fire, and was, with its contents, wholly consumed thereby; that the plaintiff and defendant at that time resided in the village of· Durhamville. The plaintiff also gave evidence tending to show that Vroman had feelings of enmity against Stephens, and that the parties had hard feelings towards each other, and they had not been on speaking terms for some years, and up to the time of the said fire, and that they had formerly been partners in business. It further appeared in evidence, that Stephens, at the time of the said fire, was at Utica. It also appeared in evidence, that the evening of the 11th of November, 1850, was nearly an unclouded moonlight, and that the moon sat at 17 minutes past eleven o'clock in the evening.

The plaintiff claimed on said trial that the defendant, on the night of the · said fire, clad in a certain over-coat, and with a glazed cap on his head, rode a certain gray mare belonging to one Frederick B. Harvey, from the defendant's residence in Durhamville, down the plank road by Wilson's tavern, and thence to Stephens' barn, set fire to the barn, and returned home. The plaintiff, after first proving the destruction of the barn and its contents by fire on the evening in question, and that the plaintiff at the time of said fire was in the city of Utica, next introduced witnesses whose testimony tended to prove the above alleged state of the case ; and for the purpose of identifying the said Vroman as the same man who fired the said barn, it became important for the plaintiff to show that the gray horse seen on that evening, going towards the barn before the fire broke out, and returning from the barn immediately after the fire broke out, resembled the said Harvey mare. It appeared in evidence that the defendant borrowed the Harvey mare of said Frederick B. Harvey, a little before sunset on the afternoon of the said 11th

day of November, and took her to his stable near his dwelling house ; that said mare was returned to the said Harvey on the evening of the 13th day of November. The following is the description of the said Harvey mare, as testified to by said *Frederick B. Harvey,* the owner, a witness introduced on the part of the plaintiff: "The mare was a light gray ; rather an ordinary sized beast; about common size. Her natural gait was a trot. She was more than an ordinary trotter in speed. On a fast trot she would trot a mile in five minutes. Her mane, tail and legs were darker than her body. She was darker about her shoulders and. neck. She was darker about her stifles than about her body. She was not very fleshy at that time. She was perhaps in ordinary condition. She was rather a smooth built animal; and was full of spirits, and did not require a great deal of whipping. She would bear the whip. She was very high life." Twenty-one witnesses were called by the plaintiff, who testified to having seen the gray horse going to or going from the said barn, and gave a description of the horse and his gait, which they saw rode on the night of the said fire. *Daniel C. Sutton* testified : " On the evening of the fire I was a little be-low Harvey's, on the plank road, returning home from Durham-ville. A man passed me on a gray horse, going towards the Oneida lake. He was on a trot when he passed me, and after-wards. He was on an ordinary trot ; not very fast, nor very slow. I did not notice the gait of the horse, more than that it was a trot. I have seen the Harvey mare since in the evening, and thought she looked a little darker than she did that night. The time I saw the Harvey mare afterwards was at Oneida depot, about a week or ten days after the fire." This witness, on *cross-examination* by defendant's counsel, testified : " The plaintiff came to me after the fire, and before the arrest of Vroman, and made some inquiries of me about the horse which I saw." The defendant's counsel then asked this question: " What did Ste-phens say that the people at the lake said about the horse ?" And thereupon the defendant's counsel proposed to prove by this witness, in answer to this question, that the plaintiff, in that in-terview with the witness, told him that the folks at the lake said

it was a large gray horse. To the said question, and the evidence proposed to be given by the defendant, the counsel for the plaintiff objected, upon the following grounds : 1. That the question and proposed evidence were incompetent. 2. That they were immaterial. 3. That it already appeared in the case that the plaintiff was at Utica at the time of the fire, and hence could know nothing about the horse, personally ; that it did not appear that the plaintiff ever saw the horse, and hence that the evidence proposed, and the question, were incompetent. 4. That the proposed testimony amounted in substance to no more than mere hearsay. 5. That the proposed testimony did not disclose who the persons were that informed the plaintiff as to the size of the horse, nor that such persons saw the horse on the evening of the fire.

The court overruled the plaintiff's objections to said question and proposed evidence, and decided that the question and evidence were competent; to which ruling and decision the counsel for the plaintiff excepted.

The plaintiff introduced evidence tending to show that the man on the gray horse was the defendant, and then rested his case. On the part of the defendant it was claimed that the gray horse seen on the evening of the fire was not the Harvey mare, and that the defendant was not out of Durhamville on the evening of the fire; and evidence was introduced, on the part of the defendant, tending to prove the same. *Isaac C. Sherman,* a brother-in-law of the defendant, among other things, testified as follows : " I had a conversation with the plaintiff shortly after the fire. I should think it was as much as two days after the fire." Here the defendant offered to prove that, at that interview, the plaintiff stated to the witness that the man that set fire to the barn rode a gray horse, and all the horse that he (the plaintiff) could find bearing the description, was Langdon's ; and to follow said declaration of the plaintiff up with proof that Langdon's horse was a large, heavy, logy-traveling, dapple gray horse. To this evidence the counsel for the plaintiff objected, and specified the same grounds of objection as those made to the question put by the defendant's counsel to Daniel C. Sutton, and

the matters offered to be proved by him, and objected to by the plaintiff's counsel. The court overruled the objection, and admitted the evidence so offered; to which ruling and decision the counsel for the plaintiff excepted. The said Sherman thereupon testified: "The plaintiff, in that conversation, said that the man he supposed rode a gray horse, and he was in pursuit of the horse; and all the horse that he could find, bearing the description, was the Langdon horse; that they described it as a large, logy horse." This witness further testified, that the Langdon horse was a large, heavy-traveling horse, logy, and dapple gray. *Henry P. Truax,* for the defendant, testified: "On Wednesday morning next after the fire, I was sent off by the plaintiff for the horse rode on the night of the fire. The plaintiff had been down into the neighborhood of the fire." Here the defendant offered to prove that the plaintiff, at that interview, told this witness that the horse they described down at the lake was a large horse, rather logy traveler, a dapple gray behind; and that the plaintiff also told the witness, at that time, that some said that it resembled the Hess horse; and to follow that up with proof that the Hess horse was sixteen hands high. To this evidence the counsel, for the plaintiff objected, and specified the same grounds of objection as those made to the question put by the defendant's counsel to Daniel C. Sutton. The court overruled the objection, and admitted the evidence. The said Truax thereupon testified: "He, the plaintiff, said the horse they described down at the lake was a large horse, rather logy traveler, and dapple gray behind. He said some said he resembled the Hess horse." The witness further testified that he, the witness, knew the Hess horse; Sandford owned him at the time of the fire. The Hess horse was a light gray, nearly white, and about sixteen hands high.

The jury found a verdict for the defendant.

*T. Jenkins* and *P. Gridley,* for the plaintiff.

*S. H. Stafford* and *J. A. Spencer,* for the defendant.

Stephens *v.* Vroman.

*By the Court*, BACON, J. The long protracted controversy between these parties, after having passed the ordeal of three trials, two in Madison county and one in Oneida, resulting in the disagreement of the juries empanneled to try it, has finally terminated, so far as the action of a jury passing upon the questions of fact is concerned, by a verdict rendered for the defendant, upon the fourth trial, before Mr. Justice Allen, at a special circuit held in Oneida county, in September, 1853. Upon every trial there has been a vast array of testimony, upon each side. The case is one of considerable importance in point of amount, but of far more consequence to the reputation of the defendant, since a verdict against him would be substantially equivalent to the conviction of an offense which, in a criminal proceeding, would consign him to the state prison for a term of years. To the parties it has been a litigation almost ruinously expensive, and exceedingly burdensome to the courts and counties where the trials have been had. The maxim of ancient jurisprudence, " *interest reipublicæ ut sit finis litium*," may well be invoked to protect, if possible, the legal tribunals from the further consumption of time in this cause ; and it is assuredly most deeply for the interest of the parties that an end should be put to this profitless litigation. Desirable as this may be, however, these considerations must not be taken for a moment into the account, if any well settled rules of law have been violated, or a verdict has been reached by the admission of illegitimate and improper testimony. If this shall prove to be the fact, " the end is not yet :" the ground must be retraced, however oppressive and tedious the journey.

Upon the fourth and last trial, to which an entire week of patient and laborious investigation was devoted, it is insisted that in the ruling of the court upon a single point, a grave error of law was committed, the consequence of which was that evidence was received not only improper in itself, but highly influential upon the verdict which was rendered. The case is one which turns almost entirely on circumstantial evidence, and it has been on every trial a leading and material point to establish the description of a gray horse, supposed to have been ridden by the

incendiary on the night of the fire. When the plaintiff com-
menced his investigations, with a view to ferret out the perpe-
trator of the outrage, his attention was directed to an animal
answering a particular description; and upon information, which
he said was derived from people at the lake, he stated to several
witnesses that he supposed the man who fired the barn rode a
large gray, logy traveling horse, and dapple gray behind. It
appeared also that at the time the fire occurred, the plaintiff was
at Utica, many miles from the scene of the conflagration, and
could of course have no personal knowledge on the subject. The
description thus given pointed to a certain horse known as the
Langdon horse. Upon the trials, the entire drift of the plain-
tiff's evidence was to show that on the night in question the
defendant had in his possession, and rode in the direction of the
fire, a gray mare, belonging to one Harvey, and the description
characterized her as a light gray, about the common size, and
more than an ordinary traveler; an animal of high life and full
of spirits, and darker about her neck and shoulders than any
other portions of her body. Upon the trial, the defendant offered
to prove by several witnesses the foregoing statements of the
plaintiff, made by him just after the occurrence of the fire, as
derived from information which he affirmed was given him by
people at the lake. To the introduction of this evidence, the
plaintiff's counsel objected that the testimony was wholly incom-
petent and immaterial, specifying particularly the grounds of
his objection; but the court overruled the objection and the tes-
timony was received. On the argument, it was urged with great
zeal and ability that the testimony was immaterial; that it was
not the best evidence of the material fact to be proved, and that
it amounted to nothing but hearsay, and was for that reason in-
admissible. The question is one by no means free from diffi-
culty, and it is frankly admitted that the first impression of the
court upon the argument was, that an error had been committed
in the ruling at the circuit, involving the necessity of granting a
new trial; subsequent reflection and a more deliberate examin-
ation of the argument have conducted us to the conclusion that
the ruling can be sustained. The question here is not as to the

Stephens *v.* Vroman.

weight of the testimony, or what degree of importance is to be attached to it, but is simply one of competency. No complaint is made in this case as to the manner in which the cause was presented to the jury by the court, and it is therefore to be presumed that they were properly instructed in respect to this evidence. It is an elementary principle, that the admissions and confessions of parties are admissible in evidence when pertinent to the issue which is to be tried. They are not by any means conclusive, and not necessarily even *prima facie* evidence of the fact to which they relate. They may be controlled and overborne by evidence of higher character and more commanding weight, but when they relate to a matter material to the issue, they should be received, and the effect to be given to them is wholly with the jury. If it appears from the declarations themselves, or from evidence *aliunde*, that the party had no personal knowledge of the facts as to which the admission is made, then but little importance is to be attached to them, and the jury will be instructed accordingly. It is conceded that the description of the animal supposed to have been ridden by the incendiary, on the night of the fire, was a most material inquiry upon the trial. The plaintiff could have proved that description by the admission of the defendant, and the defendant was in like manner at liberty to show the same thing by the admission of the plaintiff. The fact that such admission is not conclusive, does not show that it is not competent. Had the point been simply as to the description given of the horse by the plaintiff at the time in question, and the evidence been that he affirmed that he was of a particular size, color and movement, making no reference to the quarter from which he derived his knowledge, this would be competent evidence, subject to the qualification that if it also appeared that he had no means of personal knowledge, it would materially detract from the weight to be attached to the declaration, and would be controlled by evidence of a more satisfactory character. The substance of the evidence admitted under the plaintiff's objection, was the declaration of the plaintiff as to the size, color, &c., of the horse; and the fact that he, at the time, stated the sources of his knowledge, and from what

Stephens *v.* Vroman.

quarter his information was derived, does not render the declaration as to the main fact inadmissible, although it may, as it doubtless did, very materially impair its weight and limit its effect upon the minds of the jury. It is not a naked declaration of what other people said, which would be immaterial upon the principal issue, but an assertion of a fact very pertinent to the issue, qualified at the same time by indicating the means of his knowledge. It is no more immaterial than would be the admission of a merchant as to the state of an account, made upon information imparted to him by one in his employment. The admission is as to the fact, which is pertinent to the issue, and the reference to the authority on which it was made, would only qualify, not exclude, the statement. There is another point of view in which the evidence is entitled to be taken into consideration, as tending to shed some light upon the character of the evidence which the plaintiff had given through his witnesses.

When it was perceived upon the trial that the whole stress of the plaintiff's evidence was to show that the description given of the animal rode on the night of the fire, tallied with that of the mare which it was subsequently discovered was in the possession of the defendant, a strong inference would be suggested that the whole character of the evidence had been moulded into conformity with the altered circumstances of the case. The attention of the plaintiff was in the first instance directed to tracing the whereabouts of a particular animal, of which he gave a description founded on information conveyed to him—a description variant from that of the Harvey mare, in several marked respects—and he had sent at least one person to look after the horse answering this description. We are therefore strongly inclined to hold the testimony competent, in view of the character of the evidence which had been given by the plaintiff, the appearance of his witnesses and the personal relations of the parties, and as tending to show that the description on which the witnesses finally rested, and in which they mainly concurred, was entirely an afterthought, upon discovering the fact that, on the night in question, the Harvey mare was in the possession of the defendant. What weight, if any, may

Stephens *v.* Vroman.

have been given to this consideration, by the jury, it is of course impossible to say.

We are to presume, in the absence of any complaint as to the charge, that the testimony we have been considering was properly presented to the jury, and no more importance attached to it, than it intrinsically carried with it. It would in its best aspect be but a circumstance, and that of a comparatively slight and inconclusive character, in a case made up of circumstances.; and we may safely conclude that it could have had but little influence in determining the verdict of the jury. It was insisted, upon the argument, that the admission of the evidence complained of, which was alleged to be erroneous in principle, had been condemned by express adjudication ; excepting, however, a citation from the text of Phillips on evidence, and a single case from the English reports, not an authority, was produced to sustain this position. Indeed, when carefully examined, the case cited (*Pellet* v. *Ferrers*, 2 *Bos. & Pul.* 542,) will not be found to establish any such principle as was contended for on the argument. In that case, the defendant had given in evidence an answer in chancery of the plaintiff's in another suit, to show by the statements contained in it a state of facts inconsistent with the plaintiff's claims in the suit then on trial. Thereupon the plaintiff read from the same answer a paragraph containing statements made upon hearsay, and insisted he was entitled to the benefit of these statements in his own behalf. The evidence appears to have been received without objection, and, in the arguments of the counsel at bar, not the slightest mention is made of this point, and it is only noticed in the opinion of Chambre, J., in the course of his decision. What he says, therefore, were it applicable to this case, is clearly *obiter* and entitled to very little weight, but it will at once be seen that it does not touch the principle contended for here. It relates simply to the question how far a party is entitled to the benefit of statements made by him on hearsay, not to what extent they are competent when used by the adverse party against him. The marginal note to the case is simply this : "If a defendant give in evidence an answer in chancery of the plaintiff, it will not entitle the plaintiff to avail

himself of any matters contained in such answer, which are only stated on hearsay." And this, which is stated with a *semble* at the close, is really all the case decides, if indeed, it decides any thing. It is cited by Phillips only to sustain the proposition that what is stated in an answer in chancery, not from knowledge but on mere report, is not evidence in favor of the party making the statement, and on whose behalf the testimony is sought to be given. Any thing beyond this finds no support in the case cited, or in any other to which we have been referred. The question then stands disembarrassed of any adjudication, expressly upon the point, and is to be decided upon principles well established in reference to the competency of declarations made by a party to a suit, in respect to a point material to the issue. We have endeavored to show that the admission of the evidence objected to on the trial of this cause can be sustained on principle, and that no well considered authority is found to hold any contrary doctrine. If we are right, the courts will be relieved from an oppressive duty, and the parties will repose in peace upon the judgment of their peers. If wrong, there is an ultimate tribunal where the error can be corrected and the law authoritatively settled. There is no other question that requires consideration in the case, and, as the result of our concurring judgment, a new trial is denied.

New trial denied.

[JEFFERSON GENERAL TERM, July 3, 1854.  *Pratt*, *Hubbard* and *Bacon*, Justices.]