(Surrogate's Court, Cattaraugus County. October, 1897.)

1. AGREEMENT TO MAKE TESTAMENTARY DISPOSITION—DECLARATIONS.

   An agreement to compensate a son for services by some testamentary disposition of property is not proved by declarations of an intent to make such disposition, where it is not shown that they were communicated to the son, and were made to induce him to render the services, and that such services were performed in consequence thereof.

2. CONTRACTS BETWEEN RELATIVES—GRATUITOUS SERVICES.

   A son made a claim against his father's estate for work done on his father's farm, and charged therefor at the rate of $30 per year. The proof of the extent and value of his services was unsatisfactory. He lived on the

farm with his parents, though he had a business of his own. *Held*, that his services were gratuitously rendered.

3. LIMITATIONS—SERVICES FROM YEAR TO YEAR.

Limitations are a bar to a claim for more than six years of services, that were rendered from year to year under a general retainer, without an express agreement respecting the time of payment, where no payments have been made thereon within the six years.

In the matter of the estates of Harmon Stewart and Rosanna Stewart, deceased. James A. Stewart presents claims against both estates. Allowed in part.

E. D. Northrup, for claimant.

John K. Ward, for administrator and contestants.

DAVIE, S. Harmon Stewart died September 25, 1895,. leaving a will, which was admitted to probate May 25, 1896, whereby he gave all his property to his widow, Rosanna Stewart, who died intestate April 5, 1896, leaving, her .surviving, three sons, one of whom presents a claim against the estate of Harmon Stewart to the amount of $1,508.50, and against the estate of Rosanna Stewart for $100.75. After the widow's death, W. H. Proctor was appointed administrator of her estate, and also administrator with the will annexed of the estate of Harmon Stewart, deceased, and, in the course of his administration, found it necessary to dispose of the real estate for the payment of debts. None of the claims presented are contested, except that of the son James A. Stewart. This claim, principally, is for labor and services rendered by the claimant for his father during a period of several years prior to his death, and for services rendered to his mother after the decease of his father. It appears from the evidence that the claimant resided with his parents at their home, in the town of Ashford, and for several years was engaged in business as a blacksmith, but during a portion of the time was employed in various kinds of labor upon his father's farm. Harmon Stewart was somewhat aged, and, in consequence of rheumatic troubles, unable to do a large amount of physical labor. It is claimed on the part of the contestants that the right of action to recover on a large portion of the claimant's alleged indebtedness is barred by the statute of limitations. The services charged for began in the year 1871. The law is well settled that where services are rendered under a general retainer year after year, without any express agreement as to the time or measure of compensation or the term of employment,—no payments being made,—the law, for the purpose of determining when the statute of limitations begins to run, will not imply an agreement that the payment of compensation shall be postponed until the termination of the employment, but will regard the hiring as from year to year, and the wages as payable at the same time. Davis v. Gorton, 16 N. Y. 255; In re Gardner, 103 N. Y. 533, 9 N. E. 306. The statute of limitations is a bar to a claim for more than six years of services in such employment immediately preceding the death of the decedent, unless it appears that payments have been made to apply thereon within the six years, in which case a recovery is proper for

a period beginning six years prior to the first of said payments. In re Gardner, supra. It appears from the account filed that the claimant received on the 30th day of March, 1884, $35 in cash from his father. It is, however, very questionable from the evidence as to whether such payment was made by the testator to apply upon any claim which James A. Stewart held against his father at that time, or that it was intended by the testator as a payment upon, or a recognition of, any existing indebtedness. The claimant was at that time residing in the West, and evidently not prosperous in his business affairs, and his father sent him this sum for the purpose of enabling him to return home; but, even if such payment had been made to apply upon any indebtedness against the testator in favor of the claimant, the only effect of such payment would have been to extend the time in which an action might have been brought upon such claim for a period of six years from the time of such payment. More than six years had elapsed after the making of such payment before the death of the testator, and before any other payments are claimed to have been made thereon. In answer to this objection, it is asserted on behalf of the claimant that these services were rendered pursuant to an agreement that the testator should make compensation therefor by some testamentary disposition of his property. If such was the case, and these services were rendered year after year pursuant to an understanding that the claimant should be compensated therefor after the death of his father, by some provision in his father's will, then the statute did not begin to run against the claim until his father's death. Several witnesses were called by the claimant who testify to declarations made by the testator to them indicating a testamentary intention on the part of testator to compensate his son for such services as he had rendered, and expressing to these witnesses an appreciation of the kindness of the claimant in his treatment of testator and his wife. On several occasions the testator declared that this son had been good to him, had to some extent paid his bills, and that he did not know how he could have got along without his assistance; and, in substance, that what property he might leave at the time of his death he intended should go to the claimant. These declarations, in and of themselves, are of but little consequence, as they are simply expressions of a testamentary intention which was never consummated or carried into effect. They do not constitute any element of a contract, unless it is shown that they were communicated to the claimant, were made for the purpose of inducing the claimant to render the services, and that such services were performed in consequence of such promise or declarations. It does not appear from the evidence, directly or inferentially, that the claimant had knowledge of this intention on the part of the testator, or that he was present at any of the conversations where such statements were made. The transaction lacks all the material elements of that class of agreements where services are rendered under a promise of compensation by way of a testamentary disposition of property. The principle is well recognized that where claims are withheld during the lifetime of an alleged debtor, and sought to be enforced against

his estate, they should be carefully scrutinized and allowed only upon clear and satisfactory proof. Kearney v. McKeon, 85 N. Y. 139. When the claimant presented his claim, he assumed the burden of showing by clear and satisfactory proof that the services rendered by him were so rendered under a contract for compensation at the death of his father; otherwise the statute of limitations deprives him of his right to recover on a large portion of his claim. The evidence of such a contract or understanding is wanting in this case, and, if claimant is entitled to recover at all, it is upon an implied contract, arising out of the fact of the rendition of the services, and his right is subject to the rule established by the cases above cited. This being true, all of the items of the claimant's account prior in date to August, 1891, are fully barred by the statute of limitations.

It appears from the evidence that during the years 1891, 1892, 1893, and 1895, the claimant assisted to some extent in doing the haying upon his father's farm, and he has charged for such services at the rate of $30 a year. The proof as to the extent and value of such services is very shadowy and unsatisfactory. Witnesses were called, who lived in the immediate locality of this farm, who testify to having seen the claimant occasionally working upon his father's place; but there is no evidence in the case which would justify a finding that, during any one of the years named, the claimant rendered services, at the request of the testator, of the value of $30. It is asserted on part of the contestants that in view of the fact that the claimant was residing and boarding at home, that that had always been his place of residence from his youth, and that he was undoubtedly having benefits and privileges from his father and mother, such labor as he did perform was rendered by him gratuitously, and in consideration of the reciprocal relations existing between him and his parents. The legal presumption of an obligation to pay is very weak where the services rendered are of such a character that, from the relations existing between the parties, they evidently were prompted by motives of affection and reciprocal obligations. If the circumstances are such as to lead to the conclusion that the services were rendered gratuitously, the law will not imply an obligation to pay. It has been distinctly held that, however valuable the services, one cannot render them with a tacit understanding that no pecuniary charge was to be made therefor, and afterwards recover upon the quantum meruit. Moore v. Moore, 3 Abb. Dec. 303; Williams v. Hutchinson, 3 N. Y. 312; Ross v. Ross, 6 Hun, 182. It appears that during all the time from August, 1891, the claimant had a business of his own; that he made his home with his father and mother; that he did from time to time do more or less labor upon the farm. But I am inclined to think that under all the circumstances in the case, and in view of the relations existing between the claimant and his father, it must be presumed that these services were rendered in consequence of such relations, and without any expectation on the part of either the claimant or his father that a pecuniary compensation was to be made therefor.

It does, however, appear from the evidence that from and after

the year 1891 the claimant, at the request and for the benefit of the testator, paid certain demands against him, and satisfied various obligations which the testator himself was not able to meet. The various items of such payments are quite satisfactorily established by the evidence in the case, and the claimant is entitled to be reimbursed therefor out of the estate. A careful consideration of all the proof relating to these various items shows that the total amount of such items is the sum of $105.92. It appears from the account filed that the claimant has received thereon September, 1892, $40 cash, and August, 1893, one-eighth acre of land, of the value of $10; making the total credits $50, and leaving a balance due and unpaid to the claimant against the estate of Harmon Stewart, deceased, of $55.92. It also satisfactorily appears that after the death of his father the claimant incurred certain expenses in the support and maintenance of his mother, the items of which are quite satisfactorily established by the evidence, and amount in all to the sum of $97.75, upon which there has been $3 paid, leaving a balance due and owing to the claimant against the estate of Rosanna Stewart of $94.75.

A decree will be entered in accordance with the foregoing conclusions. Decreed accordingly.