"A demurrer on the ground that the complaint does not state facts sufficient to constitute a cause of action is not sustainable except when no cause of action whatever is presented for any part of the relief demanded." Section 90.

And again, under the new procedure, a demurrer for insufficiency can only be sustained when it appears that, admitting all the facts alleged, it presents no cause of action whatever. Id. § 91, citing Marie v. Garrison, 83 N. Y. 14–23; Wetmore v. Porter, 92 N. Y. 76–80; People v. Mayor, etc., of New York, 8 Abb. Prac. 7,—in all of which cases the demurrers were overruled on appeal on the precise principle stated here.

Whatever else may be inserted in a pleading by way of allegation, beyond the statement of facts sufficient to constitute a cause of action, may be disregarded as surplusage, as the rules of pleading require only that a good cause of action appear, and we need not go into all of the other allegations of a pleading for the purpose of spelling out whether or not they are matters properly inserted or alleged, as all depends upon the force and effect to be given to the pleading in the form as presented to us on this appeal.

We are of the opinion that the judgment appealed from must be affirmed, with costs. Judgment affirmed, with costs. All concur.

---

(24 Misc. Rep. 45.)

### In re DELANEY'S ESTATE.

(Surrogate's Court, Cattaraugus County. June, 1898.)

1. WORK AND LABOR—IMPLIED CONTRACTS FOR SERVICES—FAMILY RELATION.
   Where services have been rendered that were of a beneficial character, and the law would compel payment were it not for the fact that the relationship existing between the parties raises a presumption that the services were rendered gratuitously, it is necessary, in order to rebut such presumption, to show facts indicating an intention to make compensation.

2. DECEDENTS' ESTATES—CLAIMS FOR SERVICES—SUFFICIENCY OF EVIDENCE.
   Claimant, the daughter of decedent, was 38 years of age at the time of decedent's death, and had always resided with her parents. Her services, in the character of a family servant, for 14 years prior to that event, were arduous. Four and a half years before decedent's death, the services were made more exacting by reason of decedent's poor health. All she received for her work was a home and the ordinary necessaries of life. Decedent stated to neighbors at different times that it was her intention that claimant should be paid for her labor, and asked one neighbor as to the wages usually paid for such work. *Held*, that claimant should be allowed for services, but only from the date of the earliest of the declarations acknowledging a liability.

Proceedings by Marguerite Delaney, administratrix of the estate of Mary Delaney, deceased, for sale of decedent's real estate for insufficiency of personal assets. Decreed.

J. R. & Dana L. Jewell, for petitioner.
Charles S. Cary, special guardian, in pro. per.
Cary, Rumsey & Hastings, for creditors.

DAVIE, S. This is a proceeding for the sale of the real estate of deceased for payment of debts. The decedent died intestate on the

9th day of October, 1896, leaving, her surviving, no husband, but two sons, two daughters, all of whom are of full age, and a grandson of the age of 11 years; being her only heirs at law and next of kin. On the 21st day of September, 1897, letters of administration upon her estate were issued to her daughter Marguerite Delaney, who caused an inventory of the personal estate of the deceased to be made and filed ·in the office of the surrogate of said county under date of December 17, ·1897, showing the total value of the personal estate of said deceased to be only $23. The only controversy arising upon this proceeding relates to the claim of the administratrix against the estate. She files a claim, properly verified, for services rendered by her in the household of the decedent from September, 1882, to October, 1896, at the rate of $4 per week, making the total amount of her claim $2,912. The allowance of this claim is contested by the special guardian and attorneys for the creditors. The other indebtedness set forth in the petition is established, showing an insufficiency of personal assets to pay the indebtedness of the deceased, without reference to the personal claim of the administratrix. An appraisal of the real estate of the said deceased will accordingly be made, and, upon the filing of such appraisal, such decree will be made as the circumstances seem to warrant. ·

The facts relating to the personal claim of the claimant are substantially as follows: She is the daughter of the decedent, and at the time of the decedent's death was of the age of about 38 years. She had always resided at home, with her father and mother, down to the time of her father's decease, and from that time on to the death of her mother. The sons made their home with the decedent, and the grandson, for several years prior to decedent's death, had also lived in the family of the decedent. For four or five years immediately preceding her death, the decedent had been, to some extent, in poor health, and in consequence unable to perform labor to any great extent; and the responsibility of caring for the household, and of doing the necessary work in and about the same, devolved upon the claimant. It clearly appears from the evidence in the case that during the time specified the services of the claimant were of an arduous character, and that her services were well worth and of the value, during said time, of the sum of $4 per week. In fact, there is no dispute, from the evidence, in regard to the rendering of the services, their character or value; but it is asserted on part of the contestants that in view of the fact that the services for which the claim is made were rendered while claimant was a member of the family of decedent, and while she was living at home, such services are presumed to have been rendered gratuitously, and that the claimant cannot recover therefor without showing an agreement or an understanding that she should be compensated for such services, and that the evidence fails to show such agreement or understanding. The rule laid down in the case of Williams v. Hutchinson, 3 N. Y., at page 312, is as follows:

"A contract or promise to pay, as a matter of fact, requires affirmative proof to establish it. Under certain circumstances, when one man labors for another a presumption of fact will arise that the person for whom he labors is to pay him the value of his services. It is a ·conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case,

and the ordinary dealings between man and man. But, where the services are rendered between members of the same family, no such presumption will arise. We find other motives than the desire of gain which may prompt the exchange of mutual benefits between them, and hence no right of action will accrue to either party, although the services or benefits received may be very valuable. And this does not so much depend upon an implied contract that the services are to be gratuitous, as upon the absence of any contract or promise that a reward should be paid."

This rule seems to have been modified to some slight extent by the court of appeals in the case of Moore v. Moore, decided in 1860, and reported in 3 Abb. Dec. 303. In that case the court says:

"Ordinarily, from the fact of the rendition and acceptance of services beneficent in their nature, the law will imply a promise to pay what the services are reasonably worth. This implication may not be repelled wholly by the fact that the service is rendered to a parent by a son of full age; but the legal presumption of an obligation to pay is less strong when the relation of parent and child exists, than in the case of dealing between persons not bound to each other. If to the relationship be added other circumstances, tending to show, as a matter of fact, that the services were gratuitously rendered, and without any expectation at the time on either side that payment was to be made, the law will not imply a contract for compensation. A person cannot perform services, intending them to be gratuitous, and with a tacit understanding that no pecuniary charge is to be made, and afterwards recover on a quantum meruit for such services."

This case was followed in Robinson v. Raynor, 28 N. Y. 497, and has been frequently cited since then, and the rule here laid down may be regarded as the true rule governing the disposition of claims of the character of that made in this proceeding. It then becomes necessary to determine from the evidence in the case as to whether there are any facts or circumstances indicating an understanding on the part of the decedent that she was to make compensation to the claimant for such services, and whether the facts disclosed by the evidence are sufficient to overcome the presumption above referred to.

It appears from a careful examination of the evidence in detail in regard to the nature of the claimant's services, and the decedent's condition and the situation of her family, that there was no real reciprocity of benefits between the parties, for the labor rendered by the claimant, as already stated, was laborious; that she performed the same carefully; that her services were of great value to the decedent; and that all she received in return was a home and the ordinary necessaries of life. It does not appear that she had any desirable advantages, but, on the contrary, her employment partook more of the character of a servant or domestic than that of a child. She not only did the housework, and cared for her mother during her frequent intervals of sickness, but she did, to some extent, the work out of doors, the milking of the cow, and the selling and delivery of the milk. The affirmative proof upon the part of the claimant, presented for the purpose of overcoming the presumption referred to, consists in declarations made by the decedent from time to time. Mrs. Hannah Fish was a neighbor of the decedent for 30 years before her death, and knew the situation of the household of the decedent, and was accustomed to visit the decedent frequently; and she testifies that, about two years before her death, she had a conversation with decedent in relation to the claimant's

services. She says that at that time the claimant was feeling very tired, and not well, and that the decedent spoke about it, and about her working so hard, and that the decedent said: "I shall pay Maggie for her work, and see that she has her pay. She has worked hard." She also testified that the decedent on that occasion said that she had promised to pay Maggie for her work. Hattie Smith testified that she was well acquainted with the decedent's family, and that she had had conversation with the decedent in reference to the claimant's work there; that such conversation was several years before decedent's death. And she says that she was at the decedent's house; that decedent was complaining about not feeling well, and said that she was much worried over Maggie,—that Maggie wanted to go out to earn wages. And she says that she asked decedent if she could spare Maggie, and she said she did not know how she could get along without her, that the boys at home had not been doing much, and that there was a great deal of work to do. Quoting from the evidence of this witness, she says:

"I asked her if she thought Maggie was earning as much at home as she would out, and she said, 'Yes;' that she had agreed to pay her. Then she asked me the question how much we paid our girl. I told her we paid her $2.50, and had the washing done, which would amount to about fifty cents a washing, which would make it about $3 a week."

The witness Mary Merchant, who was also well acquainted with the decedent, testifies that she had a conversation with the decedent six years ago; and, quoting from her testimony, she says:

"I was in there one day, and Maggie was complaining about staying there and working for nothing; and the old lady said she had just as much as she had, that there was no sense in her complaining, that she had a farm, and that Maggie would some day get her pay. She said that while she was there she had just as much as she did. She said Maggie would get her pay for it; that she did not have any money, but that she had a farm, and that was all. She said Maggie didn't appear to want to stay, but she always said that Maggie would get her pay when she got her money."

This is substantially all the evidence bearing upon the question of an understanding between the parties that compensation should be made for the services of the claimant, and it is asserted on behalf of the contestants that these statements or declarations made by the decedent are insufficient to overcome the presumption, and insufficient from which to find that the services were rendered by the claimant under an agreement or understanding that she was to be compensated therefor. In disposing of this case, I have in mind the well-settled principle, which has been often asserted, that claims withheld during the lifetime of the alleged debtor, and sought to be enforced after his death, should be carefully scrutinized, and only admitted upon satisfactory proof. Kearney v. McKeon, 85 N. Y. 136. I also have the proposition in mind that it is always unsatisfactory to uphold a liability against an estate upon proof of declarations alone. The courts have had occasion heretofore, and with good reason, to criticise evidence of this character. Law v. Merrills, 6 Wend. 268. It has always been regarded as a primary rule of evidence that oral admissions of a party are considered the weakest kind of evidence, and always to be accepted with caution

and scrutiny. 1 Greenl. Ev. pars. 200, 201; Stephens v. Vroman, 18 Barb. 250; Michigan Carbon Works v. Schad, 38 Hun, 71. But notwithstanding the authorities above referred to, the evidence of these declarations upon the part of the decedent above set forth are of some consequence, and entitled to some consideration, in the disposition of this matter. The evidence is entirely undisputed, and the making of these statements on the part of the decedent must be taken as an established fact, and as correctly representing the decedent's intention and understanding at the time they were made. In the case of Davis v. Gallagher, 55 Hun, 393, 9 N. Y. Supp. 11, it was held that, in order to justify a recovery for services rendered by one member of the family for another, it was not necessary for the plaintiff to prove an express and definite contract, but that, in the absence of such proof, it was incumbent upon him to prove such facts and circumstances as would show an understanding or expression on the part of the decedent to pay, and of the plaintiff to receive, the value of such services. In other words, where the evidence shows that the services have been rendered, and that they were of a beneficial character, and where the law would raise a presumption to pay were it not for the fact of the relationship existing between the parties (such relationship raising a presumption that the services were rendered gratuitously), that all that it is necessary to show are facts and circumstances indicating an intention to make compensation, and to rebut or overcome such presumption; and I am inclined to the belief that these declarations, as positive and unequivocal as they are, were sufficient for that purpose. But the question is raised by the contestants, that, if such declarations are sufficient and competent for the purpose indicated, a recovery can only be had for the services rendered after the making of such declarations. I am impressed with the force of that suggestion, but it appears from the evidence that these declarations were made by the decedent as early as six years ago. That would be, substantially, four years and a half prior to her death. It also appears from the evidence that the situation between the parties at about the same time changed to some extent, that the decedent became about that time so enfeebled as to be unable to render any services in her household of any importance, and that from that time on the entire responsibility devolved upon the claimant. And, from a careful examination of all the evidence in the case, I am entirely satisfied that it was the understanding of the decedent at the time of the making of the statement which she did make to the witness Mary Merchant that she should pay the claimant for her services what the same were reasonably worth. The claim should be allowed, to the extent of $4 a week for $4\frac{1}{2}$ years prior to the death of the decedent; making the total amount of her claim so allowed $936. The decree entered herein will provide for the payment of that sum to her out of the proceeds of the sale of the real estate described in the petition herein.

Decreed accordingly.