(68 Misc. Rep. 13.)

### In re SCHMIDT'S ESTATE et al.

(Surrogate's Court, Cattaraugus County. May, 1910.)

EXECUTORS AND ADMINISTRATORS (§ 206*)—CLAIMS AGAINST ESTATE—SERVICES OF RELATIVE.

Where a family consisted of a father, mother, brother, and three sisters living on a farm belonging to the brother, one of the sisters enjoying the same conveniences as the other members of the family, and sharing the work of the common home and assisting in the work of the household in the same manner as her other sisters, will be presumed, in the absence of any express promise, to have worked gratuitously, and the services cannot form the foundation of a claim against the estate of the brother after his death.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. § 733; Dec. Dig. § 206.*]

In the matter of the estates of John Schmidt and Gottfried Schmidt, deceased. Proceedings on judicial settlement of the administratrix's account. Decree rendered.

George M. Lundy, for administratrix.
Hastings & Larkin, for heirs at law and next of kin.

DAVIE, S. Gottfried Schmidt died, intestate, October 15, 1907, leaving him surviving his widow, one son and four daughters, his only heirs at law and next of kin. At the time of his death, decedent owned 20 acres of land in the town of Olean, of the value of $2,000, but possessed no personal estate aside from household furniture of little value. Amelia Schmidt Cross, a daughter, was appointed administratrix September 10, 1909. The widow died February 21, 1909, leaving no estate. The son, John Schmidt, died, intestate, August 16, 1909, leaving no widow nor descendants, his sisters being his only heirs at law and next of kin. At the time of his decease he owned 100 acres of land of the value of $2,400, and personal property of the value of about $1,000. Mrs. Cross was appointed administratrix of his estate September 10, 1909. Notice to creditors was duly published in both estates, and, upon the expiration of the time therein specified for presentation of claims, proceedings were instituted for judicial settlement in both estates; and in that connection the administratrix files a personal claim against the estate of the father for $126 and one against the estate of her brother for $546, and seeks to have the same allowed upon this accounting. The claim in each instance is for services, and the evidence adduced to establish the demand against the father's estate is less satisfactory than that in support of the demand against the estate of the brother. Consequently the last-mentioned claim will be considered and the conclusion arrived at in that connection applied to both claims.

The daughter Mrs. Kratts was married March 24, 1897, and the daughter Mrs. Reitz September 29th of the same year. After being married, each of these daughters resided away from the family home; and thereafter the family consisted of the father, mother, John and the two younger girls, Carrie and Amelia, all residing to-

gether upon the 20-acre tract owned by the father. During the greater portion of the time covered by the services for which the claims are made, Carrie was employed at a manufacturing establishment, but assisted to some extent mornings, nights, and Sundays in the work at home. The son, John, purchased the hundred-acre farm July 26, 1902. Claimant became of age February 13, 1906. Before the purchase of the hundred-acre tract, the work on the 20-acre homestead was performed by the members of the family; the father doing as much as his advanced age and enfeebled health would permit. After John purchased his place, the two farms were operated together; and the evidence quite clearly shows that the claimant from the time that she became of age to the death of her brother, not only materially assisted in the work of the household, but also performed various kinds of outdoor work, consisting of milking, cleaning stables, planting potatoes, assisting in the haying, and other manual labor. No doubt exists regarding the meritorious and laborious nature of the services rendered by her, nor can it be doubted that the amount of such services was beyond and out of proportion to the services performed by either of the other sisters. In good faith the other distributees of these estates should consent to some reasonable remuneration to the claimant, but they do not so consent—they stand on their strict legal rights; accordingly, this controversy must be disposed of in accordance with the well-established rules covering the disposition of claims of this character. At the outset we are confronted with the well-recognized proposition that claims withheld during the lifetime of the alleged debtor and sought to be enforced after his death should be carefully scrutinized and allowed only upon satisfactory proof. Kearney v. McKeon, 85 N. Y. 136; Maisenhelder v. Chrispell, 105 App. Div. 219, 94 N. Y. Supp. 707; Rock v. Rock, 109 App. Div. 157, 93 N. Y. Supp. 646; Matter of Liddle, 35 Misc. Rep. 173, 71 N. Y. Supp. 474; Matter of Jones, 28 Misc. Rep. 338, 59 N. Y. Supp. 893; Matter of Stewart, 21 Misc. Rep. 412, 47 N. Y. Supp. 1065.

It clearly appears that during all the time these services were being rendered claimant and decedent were members of the same family; claimant after arriving at the age of 21 years continuing to remain at home, having and enjoying the same home, comforts, and conveniences as the other members of the family, and sharing with the others the burdens involved in maintaining their common home. The case is absolutely destitute of proof of any express promise on the part of the decedent to pay for these services preceding their rendition. Under such circumstances, the presumption exists that the services were gratuitously performed. The rule laid down in Williams v. Hutchinson, 3 N. Y. 312, 53 Am. Dec. 301, was that:

"A contract or promise to pay as a matter of fact requires affirmative proof to establish it. Under certain circumstances when one man labors for another a presumption of fact will arise that the person for whom he labors is to pay him the value of his services. It is a conclusion to which the mind readily comes from a knowledge of the circumstances of the particular case, and the ordinary dealings between man and man. But, where the services are rendered between members of the same family, no such presumption will

arise. We find other motives than the desire of gain which may prompt the exchange of mutual benefits between them, and hence no right of action will accrue to either party, although the services or benefits received may be very valuable. And this does not so much depend upon an implied contract that the services are to be gratuitous as upon the absence of any contract or promise that a reward should be paid."

The rigor of this rule was somewhat modified in Moore v. Moore, 3 Abb. Dec. 303. In that case the court said:

"Ordinarily from the fact of the rendition and acceptance of services, beneficent in their nature, the law will imply a promise to pay what the services are reasonably worth. This implication may not be repelled wholly by the fact that the service is rendered to a parent by a son of full age; but the legal presumption of an obligation to pay is less strong when the relation of parent and child exists than in the case of dealings between persons not bound to each other. If to the relationship be added other circumstances tending to show as a matter of fact that the services were gratuitously rendered and without any expectation at the time on either side that payment was to be made, the law will not imply a contract for compensation. A person cannot perform services intending them to be gratuitous and with a tacit understanding that no pecuniary charge is to be made and afterwards recover on a quantum meruit for such services."

The case last cited was followed in Robinson v. Raynor, 28 N. Y. 497, and in many other cases since, and may now be regarded as the true rule relating to the disposition of claims of this nature. There is no proof on behalf of the claimant that these services were rendered under any agreement for compensation. The witness, Carter, testifies that decedent came to him about six weeks before his death, and said he wanted to have his will made and to give the hundred-acre farm to Amelia. In reply to Carter's inquiry as to why he wished to discriminate against his other sisters in favor of Amelia, decedent replied:

"Amelia has always worked for me, and has more than taken the place of a hired man."

Carter then inquired if decedent had not paid her and decedent replied that he had not, but said that he had told her that, when he got the place paid for, he would make it right for anything she had done for him. These expressions on the part of decedent of appreciation of claimant's services and of a desire or intention on his part to make remuneration are of little consequence. They are simply expressions of testamentary intentions never consummated. They constitute no element of a contract, not having been made for the purpose of inducing the claimant to render the services. Matter of Stewart, 21 Misc. Rep. 412, 47 N. Y. Supp. 1065; Matter of Dusenberry, 1 Gibbons, 208, 32 N. Y. Supp. 820; Maisenhelder v. Chrispell, supra.

The only portion of decedent's declaration to Carter which has any probative force in this controversy is decedent's admission that:

"He told her that when he got his place paid for he would make it right for anything she had done."

It is always unsatisfactory to uphold a liability against an estate upon proof of declarations alone. The courts have had occasion here-

tofore, and with good reason, to criticise evidence of this character. Law v. Merrills, 6 Wend. 268.

It is a primary rule of evidence that proof of oral admissions of a party is considered the weakest kind of evidence and always to be accepted with scrutiny and caution. 1 Greenl. Ev. pars. 200, 201; Stephens v. Vroman, 18 Barb. 250; Mich. Carb. Works v. Schad, 38 Hun, 71.

Even if Carter's statement is absolutely correct in regard to decedent's admission to him that he had told claimant he would make it right with her for anything she had done for him, it is all left to speculation when he so told her—whether it was before she began the services or after their completion. The phraseology of the admission indicates quite clearly that such statement was made after the rendition of most of the services. Such admission is entirely insufficient to justify a finding that the services were rendered on account of such statement made to the claimant.

The evidence clearly shows that claimant voluntarily continued her residence with the other members of her family after she became of age the same as before, doing practically the same line of work. She was receiving the advantages and benefits of a home and sharing with the others in the performance of the work to be done. The brother from time to time gave her small sums of money, not by way of meeting any contract obligations, but simply as a present or gratuity. Under all the circumstances disclosed by the evidence, however much one's sympathies may be enlisted by the apparent equities in favor of the claim, the law will not permit of a recovery upon either of these claims.

A decree will accordingly be entered disallowing both claims. The particular form of the decree, together with the question of allowances to be made for the expenses and attorneys' fees upon this accounting, will be settled before me at my office in the city of Olean on the 12th day of May, 1910, at 1 o'clock in the afternoon.

Decreed accordingly.