OPINION OF THE COURT
Lee L. Holzman, J.
The petitioners, who are the decedent’s two daughters and the coexecutrices of her estate, filed the following applications: (1) an SCPA 1809 proceeding to disallow the claim of the decedent’s son (respondent) that the decedent had entered into a contract to bequeath one third of her estate to him; (2) an SCPA 1420 proceeding seeking a determination that the respondent forfeited his $200,000 legacy under paragraph second of the decedent’s will pursuant to the in terrorem clause contained in paragraph eleventh and that this legacy lapsed and passes to the petitioners under the residuary clause; and (3) a proceeding to dismiss the respondent’s application for a compulsory accounting.
The respondent’s claim to one third of the estate is based upon a document purportedly signed by the decedent on April 19, 1998 which reads as follows:
“Let this letter confirm that it is my desire that my son Howard Camac handle all of my business affairs, since I feel that he is better qualified than Deanna or Laura to take care of the commercial properties and investments.
“As you know, I regret the fact that my husband elected to leave my son out of his will. It is my desire that, upon my death, all three (3) of my children share equally in my estate.
“In consideration of your love and dedication to me, and in further consideration for your willingness to take care of my properties and business affairs, I *896 agree to execute a new will, leaving all of my assets to Deanna, Laura and Howard.
“Very truly yours
“signed/ Violet Camac.”
This document was considered both by this court (Matter of Camac, NYLJ, Feb. 28, 2002, at 21, col 1) and by the Appellate Division, First Department (Matter of Camac, 300 AD2d 11), upon the petitioners’ motion for summary judgment with respect to the objections filed by the respondent in the probate proceeding. That motion was granted in part by this court and in full by the Appellate Division. It was not until the summary judgment motion in the probate proceeding was pending in the Appellate Division that the respondent first asserted that he has a contractual right to one third of the estate.
The respondent stated in his deposition that the document upon which he relies arose as a result of conversations between himself and his mother. The respondent had told his mother that he wanted to be protected with regard to a loan that he had made for his father’s funeral. The decedent responded that she wanted him to be protected and that she wanted her three children to share equally in her estate. Based upon these conversations, the respondent prepared a document in March 1998 which his mother signed so that he would be protected with regard to the loan and his share of the estate. The respondent showed the March document to his attorney who “didn’t think it was strong enough language to protect” the respondent. His counsel then prepared the April document. The respondent, with no one else being present, discussed this document with his mother at her home. Specifically, he expressed his “concerns,” and she purportedly replied “do whatever you have to do to protect yourself.” She signed the document.
In the absence of a contractual obligation, a will is an ambulatory instrument that may be changed by the testator at any time. Consequently, to insure that decedents, who can no longer speak for themselves, have agreed to give up their right to freely change their wills, a “contract to make a testamentary provision of any kind” must be in writing and subscribed by the party to be charged (EPTL 13-2.1 [a] [2]). The additional requirements to establish a claim based on a contract to make a will are stated in Matter of Guarino (13 Misc 2d 539, 541 [1958]) as follows:
“However, in order to establish a claim on a contract to make a will, in addition to the usual requirement *897 of competent parties, a definite subject matter and consideration for the contract, it must be shown that the agreement is fair and equitable and the terms thereof definite and certain. (Hamlin v. Stevens, 177 N.Y. 39.) Declarations of a testamentary intention do not constitute any element of a contract unless it is shown that they were communicated to the claimant ... to render services and that such services were performed in consequence of such promise or declaration. (Matter of Stewart, 21 Misc. 412.) In Frankenberger v. Schneller (258 N.Y. 270) it was stated that a distinction must be made between a promise made and understood as a mere expression of intention and the assumption of a binding obligation in consideration of a promise given by claimant in return, or performance of a stipulated act. It was there held that recovery against an estate could not be predicated upon disappointed expectations or even an expression of intention in the form of a promise not carried out. Moreover, in order to establish such a claim against the decedent, the proof must be clear and convincing without transcending the ordinary rule requiring a claimant to establish the essentials of the claim by a fair preponderance of the evidence. (McKeon v. Van Slyck, 223 N.Y. 392; Lewis v. Merritt, 113 N.Y. 386.)”
Here, the document upon which the respondent relies falls far short of “clear and convincing” proof establishing that the terms of the contract are “definite and certain” or that the decedent made the promise to the respondent for the purpose of “inducing” him to “render services.” To the extent that the terms of this document might be considered ambiguous the respondent is not entitled to a hearing to present extrinsic evidence supporting his interpretation of the document. He has not asserted that anyone other than himself and the decedent were present during the conversations which resulted in his attorney preparing the document. The respondent’s testimony would be barred under CPLR 4519 at trial. However, even assuming arguendo that his sworn statements might be considered in this application, these self-serving statements cannot support an interpretation of the document that is not clear from the document itself. This is so because any ambiguity in the document “must be construed most strongly against” the respondent who had the document prepared by his counsel, and “favorably” to the decedent “who had no voice in the selection of *898 its language” (Jacobson v Sassower, 66 NY2d 991, 993 [1985], citing 67 Wall St. Co. v Franklin Natl. Bank, 37 NY2d 245, 249 [1975]).
If this was intended to be a bilateral contract based upon an exchange of promises, the common practice would be to have the document signed by both parties and to have it state with specificity the respondent’s contractual obligations. Instead, the document was only signed by the decedent and the purported consideration is the respondent’s “love and dedication” to his mother and his “willingness to take care” of her “properties and business affairs.” Even if the absence of the respondent’s signature on the document might be explained by the argument that the consideration demanded by the decedent was the actual performance of the acts requested, instead of a promise to perform them, the document that was signed by her should have provided language to the effect that “I agree to execute a new will. . . provided that you render all of the services needed to (or the services that I request to) take care of my properties and my business affairs for the rest of my life” (or for the specific period that she wanted the acts to be performed). Furthermore, regardless of whether it is contended that the contract is bilateral or unilateral, the language used fails to evince an intent that the decedent agreed to be bound in exchange for the consideration that she requested. “Love and affection” (especially between a child and a parent) do not constitute consideration (McRay v Citrin, 270 AD2d 191 [2000]; Rose v Elias, 177 AD2d 415 [1991]). Similarly, the respondent’s “willingness” to perform services relating to the decedent’s properties and business affairs does not reflect the assumption of a binding obligation based upon consideration. The document fails to state any specific services that the respondent was to perform with regard to the decedent’s properties or business affairs. Moreover, “willingness” is a noun defined as showing the state or quality of being “willing” which is an adjective meaning “having the mind favorably disposed” or “voluntary” (Webster’s New Twentieth Century Dictionary of the English Language [unabridged 2d ed]).
In summary, the respondent, a businessman who had assisted his 82-year-old mother with her affairs in the past without having received any specified consideration, requests that she sign a document prepared by his attorney using the language “love,” “dedication” and “willingness.” Considering the relationship of the parties, the ordinary meaning of the words used in the doc *899 ument and the circumstances surrounding its execution, the court finds that the respondent has failed to establish that the decedent agreed to be contractually bound to bequeath one third of her estate to him. The document reflects no more than “expression[s] of an intention in the form of a promise not carried out” (Matter of Guarino, supra at 541). Consequently, the petitioners’ application to disallow the respondent’s claim is granted.
The next issue is whether the $200,000 legacy to the respondent in paragraph second of the will passes to the respondent’s children under the antilapse statute, EPTL 3-3.3, or passes to the petitioners as a lapsed legacy under the residuary clause of the will. Paragraph second reads as follows:
“second, I give and bequeath the sum of Two Hundred Thousand Dollars ($200,000) to my son, Howard camac, if he shall survive me. During our lifetimes, my husband and I provided for our son, Howard camac. For this reason, not for any lack of love and affection for him but for reasons of which he is aware, I have made no further provisions for Howard or his issue in this Will, except for the bequests for the benefit of my granddaughters, samantha camac and lauren camac, in Article fourth of this will and the bequest for the benefit of my granddaughter, Jennifer camac, in Article fifth of the Violet Camac Revocable Trust, of even date herewith . . . .”
The respondent concedes that his objections in the probate proceeding triggered the in terrorem clause in paragraph eleventh, providing that he is “deemed to have predeceased” the decedent, with the result that he is barred from receiving the $200,000 legacy provided for him in paragraph second. Nevertheless, the respondent and the guardian ad litem for his infant children contend that this legacy passes to the respondent’s children under EPTL 3-3.3 (a) (2) which provides that “[u]nless the will. . . provides otherwise . . . [w]henever a testamentary disposition is made to the issue or to a brother or sister of the testator, and such beneficiary dies during the lifetime of the testator leaving issue surviving such testator, such disposition does not lapse but vests in such surviving issue, by representation.”
The petitioners contend that the legacy to the respondent lapses and does not pass to his children under the antilapse statute because the will “provides otherwise” by mandating that the respondent had to survive the decedent to benefit from the legacy. Specifically, they assert that the will evinces a clear *900 intent that the respondent’s legacy lapses by noting that a larger bequest had not been made to the respondent and his children because she and her husband had “provided for him during their lifetimes” and by providing that the respondent had to survive the decedent in order to receive the $200,000 legacy.
The antilapse statute is a default statute which comes into play only where the will does not provide otherwise. It presumes that the testator would not want a legacy to a predeceased sibling or issue to lapse if issue of such predeceased beneficiary survived the testator and that the testator’s failure to provide for this contingency was an oversight (Matter of Conay, 121 NYS2d 486, 488 [1953]). However, in the overwhelming majority of the cases, this presumption has not been applied where the will “provides otherwise” by specifically stating that “the bequest shall be effective only in the event that the legatee survived the testator” (Matter of Parker, 15 Misc 2d 162, 163 [1958], citing Wallace v Diehl, 202 NY 156, 168 [1911]; Matter of La Prejato, 3 Misc 2d 936 [1956]; Matter of Loeb, 34 NYS2d 65, 67 [1942]; Matter of Schaertl, 207 Misc 406 [1955]; Matter of Conay, supra; Annotation, Intention of Testator as Defeating Operation of Statute to Prevent Lapses, 92 ALR 846, 857). The rationale of these cases is that the survivorship requirement reflects that the testator was aware that the beneficiary might predecease and, nevertheless, elected not to make an alternate bequest. Accordingly, the antilapse presumption is not applied where the predeceased beneficiary had to survive in order to receive the legacy.
Matter of Jerge (180 Misc 268 [1943]) appears to be the only case in which the antilapse statute was held to be applicable even though the bequest to the testator’s son was conditioned upon his surviving the testator. The court found that “the use of the phraseology [survivorship] appears to be more the mannerism of the draftsman than an expression of the intent of the testator” inasmuch as the same phraseology “appears in eight different paragraphs” (Matter of Jerge, supra at 269). The court also appeared to be relying upon the presumption that testators do not want to die intestate by noting that “[t]he fact of making a will . . . raises a strong presumption against an expectation or desire on the part of the testator of having a portion of his estate undisposed of by will” (Matter of Jerge, supra at 270).
Subsequent cases have either distinguished or declined to follow Matter of Jerge (supra; Matter of Parker, supra; Matter of Conway, supra). In any event, the facts herein do not fall within *901 the Jerge rationale. The decedent’s will clearly evinces an intent to benefit the petitioners over the respondent and his family for the reason stated in paragraph second, i.e., that she and her husband had already provided for him. Moreover, treating the legacy as a lapsed legacy results in its passing under the residuary clause to the petitioners, her primary beneficiaries, and not by intestacy. The survivorship language contained in this will cannot be deemed a meaningless mannerism of the drafter inasmuch as this will was artfully drawn. Other paragraphs of the will do provide for alternate dispositions in the event that one or more of the named beneficiaries failed to survive the testator. The failure to provide for an alternate disposition to the respondent’s children in the event that he fails to meet the condition of surviving the decedent cannot be attributed to an oversight on the decedent’s part inasmuch as his children are mentioned in the same paragraph that provided that he was required to survive to receive the legacy.
Accordingly, for the reasons stated above, the court holds that the legacy to the respondent does not pass to his children under EPTL 3-3.3 because the will provides otherwise by placing the condition on the bequest that he was to receive it only if he survived the decedent. He did not fulfill this condition because he is deemed to have predeceased the decedent under the in terrorem clause.
The final issues to be determined are the petitioners’ request to dismiss the compulsory accounting proceeding and to award attorney’s fees and costs in their favor. Inasmuch as the court has determined that the respondent is neither a legatee nor a creditor, he has no standing to compel an accounting. Consequently, the application for a compulsory accounting must be dismissed. Notwithstanding that the court has decided eveiy issue raised herein in favor of the petitioners, the court does not find that the respondent’s arguments were frivolous. Accordingly, the petitioners’ application for an award of attorney’s fees is denied. Moreover, since the respondent will not receive anything from his mother’s estate, the court will not exercise its discretion to award costs in favor of the petitioners.