JESSIE B. TEETSELL, Respondent, v. MARY K. ROSS and Others, Appellants, Impleaded with JEANNE K. HUTMAN and Others, Defendants.

Third Department, July 6, 1922.

Wills — construction — devise and bequest to wife "to hold and use so long as she remains my widow" did not pass fee in real property — evidence — letter written by testator to wife which he deposited with will not admissible — family understanding that fee passed to widow and failure of plaintiff to assert rights in personal property does not affect construction of will.

The fee to real property does not pass to a widow of a testator under a provision of the will that "After all my lawful debts are paid and discharged, I devise and bequeath to my beloved wife * * * all of my property, both real and personal, of whatsoever name or nature, to hold and use so long as she remains my widow," and which makes provision for a distribution of the property in case the wife remarries.

A letter written by the testator to his wife about twenty years after the execution of the will, which he placed in an envelope and deposited with the will in his safe deposit box, where it was found after his death, which letter advised his wife that in case he should die suddenly, he wanted her to fix her money matters so that the children would receive the interest on the money, is not admissible in evidence to show that it was his intention that his wife should take the real property in fee under the will.

The family understanding of the proper construction of the will cannot control the construction which should be placed thereon by the court, and so the fact that

the members of the family proceeded, during the lifetime of the widow, on the assumption that she took the real estate in fee subject to her remarriage does not require that construction to be placed upon the will by the court.

The plaintiff was not estopped from raising the question by the fact that during the life of the widow she did not assert any rights in the personal property. VAN KIRK and KILEY, JJ., dissent, with opinion.

APPEAL by the defendants, Mary K. Ross and others, from an interlocutory judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Albany on the 16th day of February, 1922, upon the decision of the court rendered after a trial before the court without a jury at the Albany Trial Term.

Plaintiff brings this action as an heir at law of her father, Joseph B. Killip, to partition real estate of which he died seized. He left a will executed in the year 1887 duly admitted to probate which will omitting the formal parts thereof is as follows:

" *Second.* After all my lawful debts are paid and discharged, I devise and bequeath to my beloved wife, Julia R. Killip, all of my property, both real and personal, of whatsoever name or nature, to hold and use so long as she remains my widow.

" *Third.* In the event that my said wife, Julia R. Killip, marry again, I give and bequeath all of my property, both real and personal, of whatsoever name or nature, to my children now living and those that may hereafter be born, share and share alike. If any child of mine shall die, then its share of my property shall, unless said child shall leave heirs, be divided among my other children, share and share alike.

" *Fourth.* I do hereby make, constitute and appoint Julia R. Killip and George H. Ross of the City and County of Albany, State of New York, to be executrix and executor of this, my last Will and Testament, and, reposing the fullest trust and confidence in them, I do hereby direct that they be not required to give any bonds as such executrix and executor.

" *Fifth.* I do hereby make, constitute and appoint Julia R. Killip and the said George H. Ross & H. C. Hutman the guardians of my children.

" *Sixth.* I do hereby revoke all former wills by me made."

The plaintiff claims that this will only gives to the widow of the testator the use of the property during her widowhood and that as to the remainder after her death or remarriage he died intestate.

In the year 1907, twenty years after the execution of the will, the testator wrote a letter to his wife which he placed in an envelope and deposited with the will in his safe deposit box where it was found after his death. The material portion of the letter is as

follows: " If I should die suddenly I want you to fix your money matters so that after you have passed away the money shall be in such shape that the children can have the interest. Let them spend the interest but keep the principal safe so that they may be sure of an income. I would advise them not to invest it in any business, as business is so uncertain."

The testator died in the year 1912. All parties interested in the estate proceeded on the assumption that the widow under the will took an absolute fee providing she did not remarry. In due course the estate was administered and on January 30, 1914, a decree was entered by the surrogate judicially settling the accounts of the executors and determining that they pay to the widow as sole legatee under the will the balance of the estate in their hands. It is not claimed that this decree operates as *res adjudicata* on the subject-matter involved in this action.

The widow died in the year 1920 without having remarried. She left a will under which some provision was made for the plaintiff but the latter was not given an interest in the fee of her real estate. Hence the plaintiff brings this action to partition her father's real estate claiming that it did not pass to her mother under his will but that it passed to his children as undevised property subject only to the use thereof by the mother during her widowhood. This contention is resisted by the other heirs of Joseph B. Killip who received greater consideration than the plaintiff under their mother's will.

*Charles Irving Oliver,* for the appellants.

*Newton B. Van Derzee* and *Harry Cook,* for the respondent.

COCHRANE, P. J.:

Confining ourselves to a perusal of the will we think the testator intentionally or otherwise failed to devise his real estate except as to the use thereof by his wife during her widowhood and except also in the event of her remarriage. The language of the 2d paragraph of the will clearly permits no other inference and the will in its entirety discloses no disposition of the property except as aforesaid. In each of the authorities cited by the appellants to the contrary the will contained a different provision or somewhere therein considering the will in its entirety appeared one or more provisions reflecting the testamentary purpose.

We may assume without deciding the following contentions of the appellants: *First,* that the will on its face presents a doubt or ambiguity so that it should be construed in the light of extrinsic facts and circumstances; and *second,* that the letter of the testator to his wife twenty years after the execution of his will indicates

an understanding on his part that by his will he had given her absolutely his property subject only to the condition that she should not remarry.

Having made the foregoing concessions to the appellants we encounter the difficulty that the letter cannot be considered as evidence of the testator's intention. Sir James Wigram announced seven propositions as applicable to the construction of wills. The sixth and seventh of those propositions as set forth in Schouler on Wills (Vol. 1 [5th ed.], § 590), are as follows:

" (VI.) Where the words of a will, aided by evidence of the material facts of the case, are insufficient to determine the testator's meaning, no evidence will be admissible to prove what the testator intended, and the will (except in certain special cases, see VII.) will be void for uncertainty.

" (VII.) Notwithstanding the rule of law which makes a will void for uncertainty, where the words, aided by evidence of the material facts of the case, are insufficient to determine the testator's meaning, courts of law, in certain special cases, admit extrinsic evidence of *intention* to make certain the *person* or *thing* intended, where the description in the will is insufficient for the purpose."

Schouler says in the above volume (§ 578): " Moreover, provisions apparently conflicting which are contained in the will itself, repugnant parts, and whatever ambiguity may arise directly from the face of the instrument and the expressions, must be resolved, if at all, by construction, and not by external proof of what was intended. Hence the declarations or instructions of the testator to the person who wrote the will must be excluded in this connection. The patent contradiction in terms of a will may sometimes be rendered harmless by a generous construction, but never by parol extraneous proof of what was intended." Section 588: " All tribunals agree, however, in aiding the will by extrinsic proof of facts and circumstances, and thereby resolving, if possible, whatever must otherwise remain ambiguous or insensible as the written instrument stands. And one can well appreciate the good policy, if not the logic, of holding in check that bold, glaring sort of testimony which consists in rough drafts, instructions for a will, hearsay declarations of what the testator intended, the scrivener's confessions, and the like, whose sure tendency is to prove too much, to set an oral will by the side of a written and executed one." As indicated by the authorities there is a plain distinction between facts and circumstances sometimes permissible to aid in the construction of an ambiguous will and the declarations of the testator for that purpose. The latter are never received in evidence except " to make certain the *person* or *thing* intended,

where the description in the will is insufficient for the purpose; " a situation which does not here exist. The unusual diligence and research of appellants' counsel has not been rewarded by any authority which justifies the admissibility of this letter as evidence.

None of the extrinsic facts or circumstances surrounding the execution of this will throw any particular light on the testator's intention. Clearly the family understanding of the proper construction of the will cannot control the construction which should be placed thereon by the court. Nor do we find any element of estoppel arising from the fact that the plaintiff did not assert her rights in the administration of the personal estate. Every other interested party had the same knowledge and information which she possessed. She certainly did not mislead them. And her failure to insist on the distribution of the personalty as unbequeathed assets was not prejudicial but distinctly beneficial to her mother through whom the appellants derive the claim they here assert.

We think the judgment should be affirmed, with costs.

All concur, except VAN KIRK, J., dissenting, with a memorandum in which KILEY, J., concurs.

VAN KIRK, J. (dissenting):

I have a strong feeling that Joseph B. Killip intended to give his wife the fee of his property, except in the one event that she should marry again. If the construction of the will be that she is not given the fee, then, in the event that she does not marry, he has died absolutely intestate, except the provision for the use to his wife. The 3d clause of his will is a disposing clause in the event only that his wife marry again. He has made no disposition of his property at the death of his wife. Reading the 2d and 3d clauses of his will gives me this impression: that he intended to give the fee of all of his property to his wife, excepting in the one event that, if she married again, he would make another disposition of it, and this was his thought when he added the words " to hold and use so long as she remains my widow," and the one reason for adding those words. The 2d clause of his will, excepting the words " to hold and use so long as she remains my widow," is appropriate to give a fee, but he had in mind the fact that his wife might remarry. He had four small children. If she remarried, he meant to take care of these children; if she did not remarry, then he meant her to have the property and trust to her to look after the children. The words " to hold and use so long as she remains my widow " were not added for the purpose of limiting the estate he had given her. The 3d clause, it seems to me, adds strength to this view, because in it he disposes of his property in the one

event only that his wife shall marry again. If she does not marry again he does not dispose of his property at all, excepting an inferred life estate to his wife (which he does not mention). He has gone to the trouble of making a will and dies in fact intestate. The fact that he does not mention a life estate to his wife and the fact that he makes no mention of a disposition of his property at her death seem to me very significient. Also that there is no residuary clause in his will has significance. His wife, Julia R. Killip, is made the executrix, with George H. Ross; he expresses the fullest trust and confidence in his wife and Ross and relieves them from giving a bond. Evidently the person first in his mind to provide for, the first to trust, was his wife. There is no suggestion anywhere in the record that there was any other relation between himself and his wife than that of the most constant and confident trust and affection. In fact every suggestion, including the style of his letter to " Kit," found with the will, demonstrates this trust and affection for his wife. In her hands his property would be devoted to the best interests of his children. *Roseboom* v. *Roseboom* (81 N. Y. 356) seems to me to entirely justify, so far as the decision of another case can do so, this construction of this will.

The authorities are plentiful that the court will not adopt a construction of a will which involves intestacy, except as a last resort.

The circumstances, the family and his property at the time the will was made in 1887, uphold this construction. At this time his real estate was mortgaged and his personal property insignificant. His oldest child was fifteen years of age and his youngest seven. The income of his property at that time could not possibly have supported these five persons, the sole object of his care and affection; and, excepting that she should marry again, and thus presumably have support from another, while his children would be without a father, he intended that the wife should have his property, and that she, not he, would dispose of it in the interest of the children.

In construing a contract the construction put upon it by the parties is considered most instructive in determining the intent at the time the contract was made. In construing a will this construction should not have the same force probably, but it is very significant that all the members of this family, who were in constant daily communication with the father and mother, should have for so many years accepted the interpretation above suggested; and that, in the Surrogate's Court, it has been adopted and the personal estate distributed and the transfer taxes assessed in harmony with it. The atmosphere and intimacies of the home

Third Department, July, 1922.        [Vol. 201, App. Div.]

had very plainly given to each member of the family this impression. Apparently the one person who did not get this impression was the husband of the plaintiff, who was a late comer into the family. In May, 1912, the will was proved and a few months thereafter his widow made her will. Since that date to the time of her death she has managed the property as if she were the owner, every one consenting, until this controversy arose after Mrs. Killip's death. If the construction the plaintiff contends for should be given to this will, many of the acts of the widow in the use and disposition of property were mistaken and unjustified; she gave some personal property to daughters Clara and Mary, and sold shares in the laundering company, taking five per cent notes in consideration therefor. There is no trust created in the will, no instructions as to investments or reinvestments, no instruction as to income, excepting as found in the words, " to use so long as she remains my widow."

It does not seem necessary to me to hold that the words " to hold and use so long as she remains my widow " is a clause qualifying the preceding words, which are sufficient for an absolute fee; and, in connection with the next clause of the will as above suggested, it seems to me fairly plain that he did not intend thereby to destroy the former absolute gift and devise.

I think the devise and bequest created a defeasible fee simple in the widow, determinable on her remarriage only, and, in the absence of that event, her title remains absolute.

The judgment should be reversed.

KILEY, J., concurs.

Interlocutory judgment affirmed, with costs.