GRACE B. LELAND, Plaintiff, *v.* ELLERY W. HOKE and Others, Defendants.

Supreme Court, Otsego County, July 20, 1935.

*Cooke & Basinger* [*Harold T. Basinger* and *Theodore P. Feury* of counsel], for the plaintiff.

*Orange L. Van Horne* [*Theodore P. Feury* of counsel], for the defendants Ellery W. Hoke and others.

*Becker, Jackson & Farone* [*Owen C. Becker* and *Robert J. Leamy* of counsel], for the defendant Don W. Rose, individually, and as executor, etc., of Flora Mallory, deceased.

*Louis E. Walrath*, guardian *ad litem*, for the defendant Marian Louise Harvey, an infant.

*William T. Welden*, for the defendant Emma O. Quaif, individually, and as executrix, etc., of Frederick L. Quaif, deceased.

*Homer D. Owens*, for Anita Taylor and others, parties moving to be made defendants.

McNaught, J. The rights and title of the parties to this action depend upon the construction to be given to the fourth paragraph of the will of Menzo Hoke. " It has been justly observed by some jurist possessed of philosophical perception ' that no will has a twin brother.' This sage epigram points directly at the difficulties encountered by courts in trying to construe wills in the light of authority." (*Matter of King*, 200 N. Y. 189, 192.)

The industry of learned and able counsel has resulted in presenting to the court voluminous briefs, with citation of innumerable authorities. To discuss the cases cited would require the writing of a volume, and this we shall not attempt. It is sufficient to say that the authorities cited, when closely examined, disclose some special reason for classifying them into one or the other of the two groups representing the opposite sides of the question which is decisive of this case. Some of the authorities are examples of gifts to classes, as distinguished from individuals; others are illustrations of gifts to individuals, as distinguished from those to a class. One line of cases represents examples of gifts which vested, and the other a line of cases representing gifts which were contingent. It may be conceded without discussion that the gift of the remainder under the fourth paragraph of the testator's will was a gift to a class, even though we find upon examination the words " heirs at law " were used in the sense of children.

" The question whether a devise or legacy is vested or contingent, or if vested, whether it is subject to be divested by an executory gift made to take effect in defeasance of a prior gift, often presents one of the most difficult and perplexing problems which can arise in the construction of wills. The legal rules which govern the subject are qualified by so many nice refinements and distinctions, and are so complicated with the question of the testator's intention, to be drawn from obscure words or phrases, and as to which judges may and often do differ, that one may well hesitate in very many

cases as to his conclusion." (*Kilpatrick* v. *Barron*, 125 N. Y. 751, 753.)

" In the construction of a will we seek the intent of the testator as exhibited by the words he has selected. Canons of construction may aid us. Based as they are upon general considerations; upon guesses as to what the average man would intend by this expression or by that, we rest upon them in the absence of more certain indications. Slight variations of phrase, however, or differences in arrangement may lead us to opposite results." (*Matter of Bump*, 234 N. Y. 60, 63.)

In every case involving the construction of a will resort must, in the final analysis, be had to the first primary principle that the aim of the court is to determine the intention of the testator, and if such intention can be discovered it is paramount. It will not be affected by any rule of construction. (*Matter of Rooker*, 248 N. Y. 361.)

The courts are limited to the words which the testator has himself used in the will (*Matter of Durand*, 250 N. Y. 45), but if there is any ambiguity, that construction should be adopted which will best carry testator's intention into effect. (*Matter of Buechner*, 226 N. Y. 440.)

The circumstances and conditions surrounding the testator at the time of the execution of his will may be taken into consideration as bearing upon his intent. (*Matter of Rossiter*, 134 Misc. 837, 840; affd., 229 App. Div. 730; affd., 254 N. Y. 583; *Matter of Weissmann*, 137 Misc. 113, 114; affd., 232 App. Div. 698; *Matter of Donovan*, 153 Misc. 593; affd., 243 App. Div. 597.)

When the court has found what disposition of his property the testator actually intended to make, though " the search for intention is often a search after a phantom," it is then for the court to determine whether such intended provisions are valid or otherwise. (*Colton* v. *Fox*, 67 N. Y. 348, 351; *Herzog* v. *Title Guarantee & Trust Co.*, 177 id. 86, 91; *Central Trust Co.* v. *Egleston*, 185 id. 23, 33.)

At the time of the execution of the will of the testator and at the time of his death, his direct family consisted of his wife, his son, his grandson, and his daughter. With him upon his large residence farm, aside from his wife, resided the son with his wife and the grandson. In the vicinity, upon the eighty-three-acre tract of land here involved, with buildings thereon some of which had been erected by the testator subsequent to the marriage of the daughter, resided the daughter Flora and her husband. Fourteen years prior to the execution of the will the testator's daughter had contracted a marriage without his approval. For many years the daughter and her husband had, however, lived upon and had the use of the

eighty-three-acre farm. Under such circumstances the testator executed his will. He gave to the son his large farm charged with the support and maintenance of his wife, Catherine. He likewise made the son his residuary legatee. He then provided that his daughter, Flora, should have the use of the eighty-three-acre farm for her life, and appointed her an executrix of his will, omitting to appoint his son. He then provided for the disposition of the eighty-three-acre farm upon the death of his daughter, Flora, and the termination of her life estate, in the following language:

"*Fourth.* Upon the death of my said daughter Flora Mallory, I give and devise the said eighty-three acres of land to her child, or children should she leave any surviving her. But if she shall not leave any child or children her surviving, I give and devise said eighty-three acres of land to the heirs at law of my son, Menzo Hoke, Jr."

What was the intention of the testator in view of the language used, and in the light of the circumstances surrounding him? It seems clear that he intended his daughter should have the benefit of the use of the eighty-three-acre farm for her life. That cannot be questioned. Upon her death, it seems equally clear, he desired her children, should she leave any, to have the property. He evidently did not desire or intend the property should pass, in the event she died without children, out of the immediate Hoke family. He had provided for his son Menzo, but he had made no provision for his grandson. He, therefore, provided that in the event his daughter upon the termination of her life estate was not survived by children, the farm in question should pass to the heirs at law of his son. We are of the opinion he clearly intended thereby that the farm under such circumstances should pass to his grandson, Earl, son of Menzo; but realizing the possibility of Menzo having other children, he used the words " heirs at law " to the end that Earl and any other children Menzo might have should take the property. It is our opinion, if such be the true construction of the will and the true interpretation of the intention of the testator, that upon the death of the testator, Earl, the grandson, took a vested remainder, subject to being divested upon the happening of the contingency that Flora Mallory died leaving children, and subject to being opened up and partially divested in the event Menzo Hoke, Jr., had children other than Earl. Undoubtedly the testator did not envisage the possibility that upon the termination of the life estate Earl might have predeceased Flora, but neither do we find it possible to convince ourselves that he envisaged the possibility of remote relatives constituting the class to whom the farm would descend.

A remainder is not to be considered as contingent in any case where it may fairly be construed to be vested, since the law favors the vesting of estates. " The general policy of the law favors a construction which includes the vesting of estates, a vesting at the earliest possible moment, never presuming, in the absence of clear and unequivocal language, the intent that a bequest or devise shall be deemed contingent or uncertain, either as to beneficiary or otherwise." (*Matter of Chalmers*, 238 App. Div. 672, 674; affd., 264 N. Y. 239.)

To analyze and discuss the many cases which in our view justify this construction would extend this memorandum to undue length. The conclusion is warranted by the authorities. (*Moore* v. *Littel*, 41 N. Y. 66; *Hersee* v. *Simpson*, 154 id. 496; *Connelly* v. *O'Brien*, 166 id. 406; *Dougherty* v. *Thompson*, 167 id. 472, 487; *Clowe* v. *Seavey*, 208 id. 496, 502; *Matter of Watson*, 262 id. 284, 299, 300; *Matter of Chalmers*, 264 id. 239; *Simpson* v. *Kamos Realty Co., Inc.*, 223 App. Div. 98; affd., 250 N. Y. 550; *Matter of Doherty*, 227 App. Div. 265, 267.)

The conclusion that it was the intent of the testator to vest the remainder in his grandson, Earl, subject to being wholly or partially divested upon the happening of the contingencies mentioned therein, is justified by authority. (*Heath* v. *Hewitt*, 127 N. Y. 166; *Connelly* v. *O'Brien, supra*, 408; *Hebberd* v. *Lese*, 107 App. Div. 425, 427, 428; *Matter of Turner*, 206 id. 294; reaffd., on reargument, 210 id. 221.)

Having determined the intention of the testator and that carrying into effect such intention the remainder was vested in Earl Hoke subject to being divested by the happening of certain contingencies, we pass to a consideration of the effect Earl's death had upon the title.

At the time Earl Hoke died his sole heir at law upon his father's side was his aunt, the life tenant, Flora Mallory. Under the provisions of section 88 of the Decedent Estate Law, as in force at the time of his death, the inheritance having come to him on the part of the father under the definition of such term (Dec. Est. Law, § 80, subd. 2), passed to Flora Mallory. (*United States Trust Co.* v. *Taylor*, 193 App. Div. 153; affd., 232 N. Y. 609; *Matter of Chalmers*, 238 App. Div. 672; affd., 264 N. Y. 239.)

The remainder thus became vested in Flora Mallory, the life tenant. Holding the life estate, and being vested with the remainder, even though it could not come into her actual possession, Flora Mallory could devise or convey a good title. (*Matter of Chalmers, supra.*) The contingencies which would divest could not happen. Menzo, Jr., had died twenty-three years previously with-

out children other than Earl. The life tenant was upwards of sixty years of age and had no issue.

It is unnecessary to pass upon the validity of the deed from Flora Mallory, as executrix, to her husband. The title may well rest upon the deed subsequently executed by her individually.

The motion in behalf of Anita Taylor, Edna Owens, Bertha Murphy and Grace Dano, to be made parties defendant, must be denied, as such parties could have no interest in the subject of the action.

Certain testimony was taken upon the trial over objection and subject to a motion to strike out, relative to the attitude and feeling of the testator and as to statements made by him subsequent to the marriage of his daughter, Flora, and prior to the execution of the will.

Reception of oral testimony in a proceeding involving the construction of a will is exceedingly dangerous. Testimony as to declarations of a testator are inadmissible, except to explain a latent ambiguity or rebut a resulting trust. (*Reynolds* v. *Robinson*, 82 N. Y. 103; *Williams* v. *Freeman*, 83 id. 561; *Teetsell* v. *Ross*, 201 App. Div. 826.) These principles are well established and fundamental.

The testimony does not relate directly to the circumstances and conditions surrounding the testator which it might be claimed tend to shed light upon the meaning of the testamentary provision. The testimony purports to be statements and declarations of the testator as to what he intended to do. This is very different from testimony as to the circumstances surrounding the testator. The testimony related to facts and statements made years prior to the execution of the will. We are of the opinion the objection was good, and the motion to strike out is granted, so far as such testimony purports to relate to statements and declarations of Menzo Hoke.

The testimony, if allowed to stand, would have but slight force or effect in view of its remoteness, and also in view of the fact that the testator named his daughter, Flora Mallory, as an executrix of the will, to the exclusion of his son, Menzo, Jr.

The transcript of the testimony of Flora Mallory in the Surrogate's Court of Otsego county on the 6th day of June, 1927, in proceedings in the estate of Menzo Hoke, as to the receipt of which in evidence final decision was reserved, is received in evidence.

The motion of the guardian *ad litem* to dismiss the complaint at the opening of the case is denied.

The motion of the plaintiff to amend the complaint to conform to the proof as set forth in the record is granted.

To recapitulate briefly, the court holds:

That under the provisions of the fourth paragraph of the last will and testament of Menzo Hoke, Earl Hoke upon the death of the testator became vested with the remainder upon the termination of the life estate of Flora Mallory in the eighty-three-acre parcel of land here involved, subject to being divested in the event Flora Mallory died leaving child or children, and subject to being opened up and partially divested in the event other children were born to Menzo Hoke, Jr.

That upon the death of Earl Hoke, his vested remainder passed to and became vested in Flora Mallory as his sole heir at law upon his father's side.

That being vested as life tenant and remainderman, Flora Mallory conveyed a good title to Adelbert R. Mallory by deed dated the 6th day of October, 1924.

That deeds given by Flora Mallory and Earl N. Hoke to Frederick L. Quaif, and the deeds given by Flora Mallory and Adelbert Mallory to the defendants Howard N. Michaels, Don W. Rose, and also to Don W. Rose and Isabella Rose, his wife, and to Moses E. Lippitt, Frank Lettis and Ceylon K. Lettis, conveyed a good and valid title.

That upon the death of Adelbert R. Mallory, Flora Mallory became by virtue of the provisions of his last will and testament, sole owner of the eighty-three-acre tract of land in question.

That the plaintiff, Grace B. Leland, and the defendants Mary Clinton, Ellery W. Hoke and Cornelia McChesney, the interest of the defendant Mary Clinton having passed by reason of her death intestate to Kennington L. Clinton, Raymond W. Clinton, Caroline Spurbeck, Sarah Eldred, Adelbert F. Clinton, and Sidney A. Clinton, who have been made defendants herein by stipulation, have no title or interest in said eighty-three-acre tract of land.

That that portion of the eighty-three-acre tract not heretofore conveyed, and vesting in Flora Mallory at the time of her death, passed under her will and is vested as therein provided.

The complaint of the plaintiff is dismissed upon the merits, with costs to be taxed by the clerk of the county of Otsego.

Submit findings and judgment accordingly.